ELECTRONICALLY FILED - 2020 Feb 19 1:23 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA
COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS
CASE NO. 2020-CP-10-_____

GREG HARRIS,

     Plaintiff,

         v.

ANDREW COOPER, TRIDENT
MEDICAL CENTER, LLC D/B/A HCA
SOUTH ATLANTIC AND ALLIED
BARTON SECURITY SERVICES, LLC
(ALSO KNOWN AS ALLIED
UNIVERSAL SECURITY),

     Defendants.

**SUMMONS**
**(Jury Trial Requested)**

TO THE ABOVE-NAMED DEFENDANTS:

YOU ARE HEREBY SUMMONED and requested to answer the Complaint in this action of which a copy is herewith served upon you, and to serve a copy of your Answer to said Complaint upon the subscriber at his office, 8086 Rivers Avenue, Suite A, North Charleston, SC 29406, within thirty (30) days after service hereof, exclusive of the day of such service; and if you fail to answer the Complaint within the time aforesaid, the Plaintiff will apply to the Court for the relief demanded in the Complaint.

**WIGGER LAW FIRM, INC.**

**s/ Brice E. Ricker**
S.C. Bar No. 101843
Attorney for the Plaintiff
8086 Rivers Avenue, Suite A
North Charleston, SC 29406
843-553-9800
bricker@wiggerlawfirm.com

North Charleston, South Carolina
This **19th** day of **February 2020**.

ELECTRONICALLY FILED - 2020 Feb 19 1:23 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA
COUNTY OF CHARLESTON

GREG HARRIS,

       Plaintiff,

       v.

ANDREW COOPER, TRIDENT
MEDICAL CENTER, LLC D/B/A HCA
SOUTH ATLANTIC AND ALLIED
BARTON SECURITY SERVICES, LLC
(ALSO KNOWN AS ALLIED
UNIVERSAL SECURITY),

       Defendants.

IN THE COURT OF COMMON PLEAS
CASE NO. 2020-CP-10-_____

**COMPLAINT**
**(Jury Trial Requested)**

TO THE ABOVE-NAMED DEFENDANTS:

    The Plaintiff, complaining of the Defendants, alleges as follows:

**ONE**: The Plaintiff is a citizen and resident of Dorchester County, South Carolina.

**TWO**: The Defendant, Andrew Cooper, upon information and belief, is a citizen and resident of Charleston County, South Carolina.

**THREE**: The Defendant Trident Medical Center, LLC d/b/a HCA South Atlantic is a foreign corporation incorporated in Delaware and doing business in Charleston County and existing under and by virtue of the laws of the State of South Carolina.

**FOUR**: The Defendant Allied Barton Security Services, LLC (also known as Allied Universal Security) is a foreign corporation incorporated in Delaware and doing business in Charleston County and existing under and by virtue of the laws of the State of South Carolina.

**FIVE**: The parties, matters and all things and matters hereinafter alleged are within the jurisdiction of this Court.

## STATEMENT OF FACTS

**SIX**: On or about March 28, 2017, the Plaintiff was a patient at the Defendants' business located at 9330 Medical Plaza Drive in North Charleston, South Carolina.

ELECTRONICALLY FILED - 2020 Feb 19 1:23 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

**SEVEN**: The Plaintiff was recovering from a knee replacement surgery at Trident Hospital and was denied medication he is prescribed by his primary care physician. Mr. Harris was in severe pain and communicated with the doctor that the medication he was already given did not help.

**EIGHT**: When the Plaintiff attempted to leave the hospital, he was met by Defendant Andrew Cooper on the first floor. While Mr. Cooper was taking the IV pole from Mr. Harris, he knocked the walker Mr. Harris was using into his injured knee.

**NINE**: As the Plaintiff was walking out of the door to the parking garage, Defendant Cooper choked the Plaintiff and kicked him in the legs and knee.

**TEN**: The Plaintiff fell onto the ground and noticed that his stitches had come out and that his knee was bleeding at the site of the incision.

**ELEVEN**: The Plaintiff was transported back upstairs so that the hospital staff could clean and re-stitch his wound and determine if he would require additional treatment because of the assault.

**TWELVE**: Defendant Cooper was a security officer employed by Defendant Allied Barton Security Services, LLC (also known as Allied Universal Security) whom is used for security by Defendant Trident Medical Center, LLC d/b/a HCA South Atlantic.

**THIRTEEN**: Plaintiff suffered great emotional distress and injuries as a result of Defendants' improper detainment of the Plaintiff.

## FOR A FIRST CAUSE OF ACTION
## (WRONGFUL DETENTION/FALSE ARREST)

**FOURTEEN**: All prior allegations not inconsistent with this cause of action are re-alleged and incorporated by reference herein.

**FIFTEEN**: Defendants, by their words and acts and those of its agents or employees, improperly detained the Plaintiff.

**SIXTEEN**: Defendants improperly detained the Plaintiff in a manner that resulted in injuries to the Plaintiff.

**SEVENTEEN**: Such restraints were performed intentionally by the Defendants and their agents or employees and were unlawful.

**EIGHTEEN**: Defendants and their agents or employees lacked probable cause to detain Plaintiff.

**NINETEEN**: As a direct and proximate result of Defendants and their agents' or employees' wrongful detention of Plaintiff, Plaintiff has sustained actual and consequential damages.

**TWENTY**: Plaintiff is informed and believes he is entitled to judgment against Defendants for actual, consequential, and punitive damages.

## FOR A SECOND CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress/Outrage)

**TWENTY-ONE**: The Plaintiff reiterates and re-alleges the allegations above as if fully set forth herein.

**TWENTY-TWO**: The Defendants' extreme and harsh tactics utilized by the Defendants were excessive, extreme and outrageous beyond the bounds of what reasonable adults should endure and put the Plaintiff in reasonable fear.

**TWENTY-THREE**: The Defendants' restraint of Plaintiff and detainment of the Plaintiff were intentional and unlawful. As a result, the Plaintiff was deprived of his liberty without lawful jurisdiction.

**TWENTY-FOUR**: The Defendants were negligent and grossly negligent in their execution of the detainment, such conduct being so extreme and outrageous.

**TWENTY-FIVE**: The emotional distress suffered by the Plaintiff was so severe that no reasonable person could be expected to endure it.

**TWENTY-SIX**: As a direct and proximate result of the Defendants' misconduct, the Plaintiff suffered actual damages, including, but not limited to, physical pain and suffering, anxiety, emotional trauma, deprivation of his liberty, public embarrassment and humiliation, loss of freedom, mental anguish, emotional distress and attorney fees.

**TWENTY-SEVEN**: The Plaintiff is informed and believes that he is entitled to actual and punitive damages in an amount to be determined at trial.

## FOR A THIRD CAUSE OF ACTION
### (Negligent Hiring, Training and Supervision)

**TWENTY-EIGHT**: The Plaintiff repeats and re-alleges all of the above paragraphs and all subsequent paragraphs as if each were set forth herein verbatim.

**TWENTY-NINE**: Defendants were negligent, wanton, reckless and/or acted with deliberate indifference in the following particulars:

    a)    Failure to adequately monitor and supervise the hiring practices of its personnel to ensure that only qualified applicants were hired;

    b)    Failure to institute and follow reasonable hiring practices to ensure that only qualified applicants were hired;

    c)    Failure to supervise and correct actions of its personnel when they knew or should have known that a pattern of questionable and unconstitutional practices and behavior existed; and

    f)    In such other and further particulars as discovery will show.

ELECTRONICALLY FILED - 2020 Feb 19 1:23 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2020 Feb 19 1:23 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

**THIRTY**: As a direct and proximate result of the Defendants' misconduct, the Plaintiff suffered actual damages, including, but not limited to, physical injury, mental anguish, emotional distress and attorney fees.

**THIRTY-ONE**: The Plaintiff was informed and believes that he is entitled to actual and punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for Judgment against the Defendants in the amount of actual damages, property damage and punitive damages, the costs of this action and any further relief as this Court deems just and proper.

WIGGER LAW FIRM, INC.

**s/ Brice E. Ricker**
S.C. Bar No. 101843
Attorney for the Plaintiff
8086 Rivers Avenue, Suite A
North Charleston, SC 29406
843-553-9800
bricker@wiggerlawfirm.com

North Charleston, South Carolina
This **19th** day of **February 2020**.

ELECTRONICALLY FILED - 2020 Mar 17 2:30 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA
COUNTY OF CHARLESTON

GREG HARRIS;

PLAINTIFF;

V.

ANDREW COOPER, TRIDENT MEDICAL
CENTER, LLC D/B/A HCA SOUTH
ATLANTIC AND ALLIED BARTON
SECURITY SERVICES, LLC (ALSO KNOWN
AS ALLIED UNIVERSAL SECURITY);

DEFENDANTS.

COURT OF COMMON PLEAS
FOR THE NINETH JUDICIAL CIRCUIT

CASE NO.: 2020-CP-10-00906

**MOTION TO EXTEND SERVICE
UNDER RULE 7(b)(A)**
and
**MOTION TO SERVE DEFENDANT
ANDREW COOPER
BY PUBLICATION**

TO:     ANDREW COOPER, DEFENDANT:

PLEASE TAKE NOTICE that the Plaintiff, by and through his undersigned counsel hereby moves the Court for an Order pursuant to Local Rule 7(b)(A) to extend the amount of time by sixty (90) days to serve the Defendant, Andrew Cooper and moves the Court for an Order, pursuant to Rule 7(b)(A) allowing the Plaintiff to serve the Defendant, Andrew Cooper by publication.

On March 4, 2020, the Plaintiff attempted to serve the Defendant, Andrew Cooper via Process Server and was unsuccessful in serving the Defendant with the Pleadings. **(See attached as Exhibit 1 - Affidavit of Non-Service)**.

The Plaintiff has performed his due diligence in trying to serve the Defendant, Andrew Cooper however, has been unsuccessful as the Plaintiff does not have any other details or information regarding Andrew Cooper and he no longer is employed with Defendant ALLIED BARTON SECURITY SERVICES, LLC (ALSO KNOWN AS ALLIED UNIVERSAL SECURITY). **See attached as Exhibit 2- Affidavit of Due Diligence).**

**WHEREFORE,** the Plaintiff hereby moves the Court for the following:

1. For an Order allowing the Plaintiff, Greg Harrie to extend the amount of time by sixty (90) days to serve the Defendant, Andrew Cooper; and

2. For an Order to serve the Defendant, Andrew Cooper by publication in the local newspaper, to run once a week for three consecutive weeks.

(Signature on Following Page)

1

ELECTRONICALLY FILED - 2020 Mar 17 2:30 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

**WIGGER LAW FIRM, INC.**

**s/ Brice E. Ricker**
Brice E. Ricker, Esq.
S.C. Bar #: 101843
Attorney for the Plaintiff
8086 Rivers Avenue
North Charleston, SC 29406
843-553-9800

N. Charleston, South Carolina
16th day of March 2020.

# Exhibit 1:

ELECTRONICALLY FILED - 2020 Mar 17 2:30 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906



## AFFIDAVIT OF NON-SERVICE

State of South Carolina            County of Charleston            Common Pleas Court

Case Number: 2020-CP-10-00906

Plaintiff:
**GREG HARRIS**

vs.

Defendant:
**ANDREW COOPER; TIRDENT MEDICAL CENTER, LLC D/B/A HCA
SOUTH ATLANTIC AND ALLIED BARTON SECURITY SERVICES, LLC (
ALSO KNOWN AS ALLIED UNIVERSAL SECURITY)**

For:
Brice E. Ricker
Wigger Law Firm, Inc.
8086 RIVERS AVENUE
NIORTH CHARLESTON, SC 29406

Received by PROCESS SERVICE, INC. to be served on **ANDREW COOPER, TRIDENT MEDICAL CENTER, 9330 MEDICAL PLAZA DR., CHARLESTON, SC 29406**

I, Bob Clair, being duly sworn, depose and say that on the **4th day of March, 2020** at 11:18 am, I:

DISCONTINUED ATTEMPTING SERVICE of the **SUMMONS; COMPLAINT  for the reasons detailed in the comments below.**

**Additional Information pertaining to this Service:**
3/4/2020  11:18 am  Attempted service at the above address no one knew Andrew Cooper there. Also, spoke with unit supervisor for Allied Security,  said he know longer works at this facility and he heard the defendant moved out of the Charleston area.  Unable to serve at this time, with the information provided . Attempted internet and Idicore locate search and there were over 70 Andrew Cooper's in SC and we are unable to narrow the search to a viable local address.

ELECTRONICALLY FILED - 2020 Mar 17 2:30 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2020 Mar 17 2:30 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

## AFFIDAVIT OF NON-SERVICE For 2020-CP-10-00906

I am over eighteen and have no interest in the above action.

Bob Clair
Process Server

PROCESS SERVICE, INC.
P.O. Box 20097
Charleston, SC 29413
(843) 577-2355

Subscribed and Sworn to before me on the 4th day
of March, 2020 by the affiant who is personally
known to me.

Our Job Serial Number: LEX-2020000562

NOTARY PUBLIC

PRINTED SIGNATURE          Copyright © 1992-2020 Database Services, Inc. - Process Server's Toolbox V8.1c

Commission Expires:

3-76.29

# Exhibit 2:

ELECTRONICALLY FILED - 2020 Mar 17 2:30 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2020 Mar 17 2:30 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

GREG HARRIS;

          PLAINTIFF;

V.

ANDREW COOPER, TRIDENT MEDICAL
CENTER, LLC D/B/A HCA SOUTH
ATLANTIC AND ALLIED BARTON
SECURITY SERVICES, LLC (ALSO KNOWN
AS ALLIED UNIVERSAL SECURITY);

          DEFENDANTS.

COURT OF COMMON PLEAS

FOR THE NINETH JUDICIAL CIRCUIT

CASE NO.: 2020-CP-10-00906

**AFFIDAVIT OF DUE DILIGENCE**

Now comes affiant, being first duly sworn on oath, and deposes and states as follows:

On March 4, 2020, I attempted to serve the Defendant, Andrew Cooper via Process Server and was unsuccessful in serving the Defendant with the Pleadings. **(See attached as Exhibit 1 - Affidavit of Non-Service)**.

I have performed my due diligence in trying to serve the Defendant, Andrew Cooper however, have been unsuccessful as I do not have any other details or information regarding Andrew Cooper and he no longer is employed with Defendant ALLIED BARTON SECURITY SERVICES, LLC (ALSO KNOWN AS ALLIED UNIVERSAL SECURITY).   **See attached as Exhibit 2- Affidavit of Due Diligence).**

                               *Rebeca Powell*
                               Rebeca Powell

Signed and Sworn before me this
16th day of March 2020.

*Jennifer D. Gravelle*
NOTARY PUBLIC FOR SOUTH CAROLINA
My Commission Expires: 9/17/22

JENNIFER D. GRAVELLE
Notary Public-State of South Carolina
My Commission Expires
September 17, 2023

ELECTRONICALLY FILED - 2020 Mar 17 5:13 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA
COUNTY OF CHARLESTON

GREG HARRIS;

        PLAINTIFF;

V.

ANDREW COOPER, TRIDENT MEDICAL
CENTER, LLC D/B/A HCA SOUTH
ATLANTIC AND ALLIED BARTON
SECURITY SERVICES, LLC (ALSO KNOWN
AS ALLIED UNIVERSAL SECURITY);

        DEFENDANTS.

COURT OF COMMON PLEAS
FOR THE NINETH JUDICIAL CIRCUIT

CASE NO.: 2020-CP-10-00906

**ORDER TO EXTEND SERVICE**
**and**
**ORDER TO SERVE DEFENDANT**
**ANDREW COOPER**
**BY PUBLICATION**

UPON MOTION of the Plaintiff, by and through his undersigned attorney, the Court grants the Plaintiff an Order to Extend Service by sixty (90) days and permission to serve the Defendant, Andrew Cooper via publication due to the fact that all attempts to serve the Defendant have been exhausted.

On March 4, 2020, the Plaintiff attempted to serve the Defendant, Andrew Cooper via Process Server and was unsuccessful in serving the Defendant with the Pleadings. **(See attached as Exhibit 1 - Affidavit of Non-Service)**.

The Plaintiff has performed his due diligence in trying to serve the Defendant, Andrew Cooper however, has been unsuccessful as the Plaintiff does not have any other details or information regarding Andrew Cooper and he no longer is employed with Defendant ALLIED BARTON SECURITY SERVICES, LLC (ALSO KNOWN AS ALLIED UNIVERSAL SECURITY). **See attached as Exhibit 2- Affidavit of Due Diligence).**

IT IS HEREBY ordered, adjudged and decreed that the Court grants the following:

1. A 90-day extension of time to serve the Defendant, Andrew Cooper; and

2. To serve the Defendant, Andrew Cooper by publication in the local newspaper, to run once a week for three consecutive weeks.

IT IS SO ORDERED.

_____
Clerk of Court

Charleston, South Carolina
_____ day of _____, 2020.

1

ELECTRONICALLY FILED - 2020 Mar 17 5:13 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906



Charleston Common Pleas

**Case Caption:**     Greg  Harris  VS Andrew  Cooper  , defendant, et al

**Case Number:**     2020CP1000906

**Type:**     Order/Publication

So Ordered

s/Jennifer B. McCoy #2764

Electronically signed on 2020-03-17 17:13:39     page 2 of 2

ELECTRONICALLY FILED - 2020 Apr 16 9:20 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS

CIVIL ACTION NO:  2020-CP-10-00906

Greg Harris
                              Plaintiff,

v.

Andrew Cooper, Trident Medical Center d/b/a
HCA South Atlantic and Allied Barton
Security Service, LLC, d/b/a AlliedBarton and
Yale Enforcement Services n/k/a Allied
Universal Services

                              Defendants.

**ANSWER OF DEFENDANTS ANDREW
COOPER AND ALLIED BARTON
SECURITY SERVICE, LLC (D/B/A
ALLIEDBARTON/YALE
ENFORCEMENT SERVICES) AND
ALLIED UNIVERSAL SERVICES TO
PLAINTIFF'S AMENDED COMPLAINT**

**(Jury Trial Demanded)**

**TO:  BRICE E. RICKER, ESQUIRE, ATTORNEY FOR PLAINTIFF AND TO THE
PLAINTIFF ABOVE NAMED:**

The Defendants Andrew Cooper and Allied Barton Security Services, LLC (d/b/a

AlliedBarton/ Yale Enforcement Services) and Allied Universal Security (and now presently

known as "Allied Universal") herein file their Answer to the Plaintiff's Amended Complaint

and would respectfully show as follows:

**FOR A FIRST DEFENSE**

1.       Each and every allegation of the Plaintiff's Amended Complaint not hereinafter

admitted is expressly denied.

**FOR A SECOND DEFENSE**

2.       Allied Barton Security Services, LLC (d/b/a AlliedBarton/Yale Enforcement

Services) and Allied Universal Services (now presently known as "Allied Universal" and

collectively referred  to as "Allied Universal" for all purposes hereafter) and Andrew Cooper

ELECTRONICALLY FILED - 2020 Apr 16 9:20 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

would admit that Allied Universal is a limited liability company organized and existing under the laws of Delaware and would further admit that Allied Universal did business in the State of South Carolina, in the county of Charleston; the Defendant Andrew Cooper would admit that at all times relevant hereto he was an employee of Defendant Allied Universal; all remaining allegations of the Plaintiff's Amended Complaint are again denied.

## FOR A THIRD DEFENSE

3.     The Defendants Allied Universal and Andrew Cooper would show, upon information and belief, that any injuries or damages sustained by the Plaintiff, which are specifically denied, were the result of the acts or omissions of others not in the employ or control of these Defendants and, therefore, the Plaintiff cannot recover from these Defendants in any sum whatsoever.

## FOR A FOURTH DEFENSE

4.     The Defendants would herein show that the Plaintiff's Amended Complaint fails to state facts sufficient to constitute a cause of action pursuant to *Rule 12(b)(6) of the South Carolina Rules of Civil Procedure* and, therefore, the Plaintiff's Amended Complaint must be dismissed in whole or in part.

## FOR A FIFTH DEFENSE

5.     The Defendants would herein show that the Plaintiff's Amended Complaint alleging wrongful detention/false arrest is time barred by the applicable South Carolina Statute of Limitation found in South Carolina Code of Laws Section 15-3-550 and, accordingly, the Plaintiff's Amended Complaint must be dismissed in whole or in part.

ELECTRONICALLY FILED - 2020 Apr 16 9:20 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

### FOR A SIXTH DEFENSE

6.     The Defendants reserve the right to move to amend their Answer based upon motion timely made once the process of discovery and depositions has been completed should additional defenses become known or warranted.

### FOR A SEVENTH DEFENSE

7.     The Defendants would show, upon information and belief, that at the time of Plaintiff's alleged detention reasonable cause existed based on facts and circumstances then known and, accordingly, the Plaintiff cannot recover from the Defendants in any sum whatsoever.

### FOR AN EIGHTH DEFENSE

8.     The Defendants would show, upon information and belief, that any actions or statements on the part of Allied Universal and/or its agents or employees were reasonable with respect to the time, place and manner of any occurrence and were in furtherance of the Defendant Allied's legitimate business interests, and, therefore, any alleged actions or statements were taken or made in good faith and the Plaintiff cannot recover from the Defendants in any sum whatsoever

### FOR A NINTH DEFENSE

9.     The Defendants Allied Universal and Andrew Cooper would show, upon information and belief, that the injuries sustained by the Plaintiff were the result of the sole negligence of the Plaintiff and therefore, the Plaintiff cannot recover any sum whatsoever from the Defendants.

### FOR A TENTH DEFENSE

10.     The Defendants Allied Universal and Andrew Cooper would show, upon information and belief, that any injuries or damages sustained by the Plaintiff were due to his own negligent, careless, reckless and grossly negligent acts or omissions which combined and concurred with any negligence on the part of the Defendants, which is specifically denied, to

ELECTRONICALLY FILED - 2020 Apr 16 9:20 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

produce such injuries or damages, if any, and without which such injuries or damages would not have occurred.  The Defendants plead such negligence, carelessness, recklessness and gross negligence on the part of the Plaintiff and would ask that this Court compare the negligence of the Plaintiff and the Defendants and if it is determined that the Plaintiff's negligence, carelessness, recklessness and gross negligence was greater than the negligence, carelessness, recklessness and gross negligence of the Defendants, which is specifically denied, then the Plaintiff should be totally barred from recovery and if it is determined that the Plaintiff's negligence, carelessness, recklessness and gross negligence is equal to or less than the negligence of the Defendants, then the amount of recovery available to the Plaintiff should be reduced by the percentage of the Plaintiff's own negligence, carelessness, recklessness and gross negligence.

## FOR AN ELEVENTH DEFENSE

11.    Pursuant to S.C. Code Ann. §15-32-520, any proceeding to determine punitive damages should be bifurcated from any trial to determine liability and compensatory damages.

## FOR A TWELFTH DEFENSE

12.    Any award of punitive damages should not exceed the greater of three (3) times the amount of compensatory damages as provided for in S.C. Code Ann. §15-32-530, or as set forth in the further provisions of §15-32-530.

## FOR A THIRTEENTH DEFENSE

13.    The Defendants Allied Universal and Andrew Cooper would show, upon information and belief, that the Plaintiff's claim for punitive damages violates the Fifth, Sixth, Seventh, Eighth and Fourteenth Amendments to the Constitution of the United States of America in that it violates the double jeopardy clause in that these Defendants could be subjected to multiple awards of punitive damages for the same set of facts; the self-

ELECTRONICALLY FILED - 2020 Apr 16 9:20 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

incrimination clause is being violated because these Defendants can be compelled to give testimony against themselves in a penalty situation such as punitive damages; the assessment of punitive damages by a burden of proof less than beyond a reasonable doubt is violative of the Sixth and Fourteenth Amendments in that punitive damages are a fine or penalty and are, therefore, quasi-criminal in nature; Plaintiff's claim for punitive damages violates these Defendants' right to access the courts as guaranteed by the Seventh and Fourteenth Amendments because the threat of an award of punitive damages chills these Defendants' exercise of that right; the Plaintiff's claim for punitive damages violates the Eighth Amendment's guarantee that excessive fines shall not be imposed, the Plaintiff's claim for punitive damages violates both the due process and equal protection clauses of the Fourteenth Amendment in that the standard for awarding either punitive damages is unduly vague and, therefore, violates both procedural and substantive due process safeguards; therefore, the Plaintiff's claim for punitive damages should be dismissed.

**Wherefore**, having fully answered the Plaintiff's Amended Complaint, the Defendants Allied Universal and Andrew Cooper would pray that the same be dismissed with costs being granted to them. The Defendants also pray for such other and further relief as the court deems just and proper, and also demand a trial by jury.

*Respectfully submitted,*

MURPHY & GRANTLAND, P.A.

*s/Ronald B. Diegel*
Ronald B. Diegel, Esquire
Kerri A. Rupert, Esquire
Timothy J. Caiello, Esquire
4406-B Forest Drive (29206)
P.O. Box 6648
Columbia, South Carolina 29260
(803) 782-4100

**Attorneys for Defendant Andrew Cooper and
AlliedBarton Security Service, LLC (d/b/a
AlliedBarton/Yale Enforcement Services) and
Allied Universal Services**

Columbia, South Carolina
April 16, 2020

ELECTRONICALLY FILED - 2020 Apr 16 9:20 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2020 Apr 17 12:45 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Greg Harris,

Plaintiff,

v.

Andrew Cooper, Trident Medical Center, LLC
d/b/a HCA South Atlantic, AlliedBarton
Security Services, LLC, d/b/a AlliedBarton and
Yale Enforcement Services n/k/a Allied
Universal Services,

Defendants.

IN THE COURT OF COMMON PLEAS

C.A. No. 2020-CP-10-00906

**ANSWER OF TRIDENT MEDICAL
CENTER, LLC, TO AMENDED
COMPLAINT**

Trident Medical Center, LLC, ("Trident"), improperly identified in the Amended
Complaint as Trident Medical Center, LLC d/b/a HCA South Atlantic, by and through the
undersigned counsel of record, responds to and answers Plaintiff's Amended Complaint as
follows:

**ANSWER**

1.      Answering Paragraph 1, Trident lacks sufficient information and knowledge to
form a belief as to the truth of the allegations contained therein and said allegations are therefore
denied.

2.      Answering Paragraph 2, these allegations are not directed to Trident and a
response is not, therefore, required from Trident.  To the extent a response is required, Trident
lacks sufficient information and knowledge to form a belief as to the truth of the allegations
contained therein and said allegations are therefore denied.

3.      Answering Paragraph 3, it is admitted that Trident Medical Center, LLC, is a
Delaware corporation with a principal place of business in Charleston County, South Carolina.  It
is further admitted that Trident Medical Center, LLC, operates Trident Medical Center located in

ELECTRONICALLY FILED - 2020 Apr 17 12:45 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Charleston County, South Carolina. Except as admitted, the allegations contained in Paragraph 3 are denied.

4.    Answering Paragraph 4, these allegations are not directed to Trident and a response is not, therefore, required from Trident. To the extent a response is required, Trident lacks sufficient information and knowledge to form a belief as to the truth of the allegations contained therein and said allegations are therefore denied.

5.    Answering Paragraph 5, these allegations are not directed to Trident and a response is not, therefore, required from Trident. To the extent a response is required, Trident lacks sufficient information and knowledge to form a belief as to the truth of the allegations contained therein and said allegations are therefore denied.

6.    Answering Paragraph 6, the allegations in this paragraph contain legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

7.    Answering Paragraph 7, the allegations in this paragraph contain legal conclusions to which no response is required. To the extent a response is required, the allegations are denied.

8.    Answering Paragraph 8, this answering Defendant is informed and believes the allegations contained in Paragraph 8 of the Amended Complaint refer to events detailed in Plaintiff's medical records. Those referenced medical records are in writing and speak for themselves with respect to their content. Further reference is made to specific testimony of witnesses involved for a complete description of their involvement, the timing thereof, and an appropriate interpretation of the medical records. To the extent the allegations contained in Paragraph 8 are consistent with the written documents and said testimony of witnesses, the same

ELECTRONICALLY FILED - 2020 Apr 17 12:45 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

are admitted; otherwise, the allegations contained in Paragraph 8 are denied.  It is specifically admitted that Trident Medical Center is located at 9330 Medical Plaza Drive, North Charleston, South Carolina.  Except as admitted, the allegations are denied.

9.  Answering Paragraph 9, this answering Defendant is informed and believes the allegations contained in Paragraph 9 of the Amended Complaint refer to events detailed in Plaintiff's medical records.  Those referenced medical records are in writing and speak for themselves with respect to their content.  Further reference is made to specific testimony of witnesses involved for a complete description of their involvement, the timing thereof, and an appropriate interpretation of the medical records.  To the extent the allegations contained in Paragraph 9 are consistent with the written documents and said testimony of witnesses, the same are admitted; otherwise, the allegations contained in Paragraph 9 are denied.  Except as admitted, the allegations are denied.

10.  Answering Paragraph 10, the allegations of this Paragraph appear directed to another Defendant, therefore no response is required from this Defendant.  To the extent a response is required, the allegations are denied.  It is specifically denied that Defendant Cooper was an employee or agent of Trident at any time relevant to the events in the Complaint. It is specifically admitted that Trident Medical Center, LLC, had an independent contractor relationship with Yale Enforcement Services, Inc., to provide security services at Trident during the time in issue.  Except as specifically admitted, the allegations are denied.

11.  Answering Paragraph 11, the allegations of this Paragraph appear directed to another Defendant, therefore no response is required from this Defendant.  To the extent a response is required, the allegations are denied.

ELECTRONICALLY FILED - 2020 Apr 17 12:45 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

12.    Answering Paragraph 12, the allegations of this Paragraph appear directed to another Defendant, therefore no response is required from this Defendant.  To the extent a response is required, the allegations are denied.

13.    Answering Paragraph 13, the allegations of this Paragraph appear directed to another Defendant, therefore no response is required from this Defendant.  To the extent a response is required, the allegations are denied.

14.    Answering Paragraph 14, Defendant lacks sufficient knowledge and information to form a belief as to the truth of these allegations and said allegations are therefore denied.

15.    Answering Paragraph 15, it is specifically admitted that the Plaintiff received additional treatment at Trident.  Except as specifically admitted, the allegations are denied.

16.    Answering Paragraph 16, some of the allegations of this Paragraph appear directed to another Defendant, therefore no response is required from this Defendant.  To the extent a response is required, the allegations are denied for a lack of information and belief.  It is admitted that Trident Medical Center, LLC, had an independent contractor relationship with Yale Enforcement Services, Inc., to provide security services at Trident.  It is specifically denied that Defendant Cooper was an employee or agent of Trident at any time relevant to the events in the Complaint.  Except as specifically admitted, the allegations are denied.

17.    Answering Paragraph 17, it is specifically denied that Defendant Cooper was acting within the course and scope of his employment with Trident as he was not an employee of agent of Trident at any time relevant to the events in the Complaint.  Except as specifically admitted, the allegations are denied.

18.    Answering Paragraph 18, denied.

ELECTRONICALLY FILED - 2020 Apr 17 12:45 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

19.    Answering Paragraph 19, Trident incorporates by reference, as if fully set forth herein, its responses to the preceding paragraphs and allegations of the Amended Complaint.

20.    Answering Paragraph 20, the allegations contained in Paragraph 20 including subparts (a) through (f) are denied.

21-22.  Answering Paragraphs 21-22, the allegations contained therein are denied.

23.    Answering Paragraph 23, Trident incorporates by reference, as if fully set forth herein, its responses to the preceding paragraphs and allegations of the Amended Complaint.

24.    Answering Paragraph 24, the allegations contained therein are denied.

25.    Answering Paragraph 25, the allegations contained therein are denied.

26-31.   Answering Paragraphs 26-31, the allegations contained therein are denied.

32.    Answering Paragraph 32, Trident incorporates by reference, as if fully set forth herein, its responses to the preceding paragraphs and allegations of the Amended Complaint.

33-39.  Answering Paragraphs 33-39, the allegations contained therein are denied.

40.    Answering Paragraph 40, Trident incorporates by reference, as if fully set forth herein, its responses to the preceding paragraphs and allegations of the Amended Complaint.

41.    Answering Paragraph 41, the allegations contained therein are denied.

42.    Answering Paragraph 42, the allegations contained in Paragraph 42 including subparts (1) through (8) are denied.

43-44.  Answering Paragraph 43-44, the allegations contained therein are denied.

45.    Answering Paragraph 45, Trident incorporates by reference, as if fully set forth herein, its responses to the preceding paragraphs and allegations of the Amended Complaint.

46-49.  Answering Paragraphs 46-49, the allegations contained therein are denied.

ELECTRONICALLY FILED - 2020 Apr 17 12:45 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

**EACH AND EVERY ALLEGATION OF PLAINTIFF'S AMENDED COMPLAINT, INCLUDING THE ALLEGATIONS OF PLAINTIFF'S PRAYER FOR RELIEF, NOT HEREIN EXPLICITLY ADMITTED IS DENIED.**

## ADDITIONAL DEFENSES

As additional defenses, Trident pleads as follows:

### FIRST DEFENSE

Plaintiff's alleged damages and injuries were not proximately caused by any acts or omissions of Trident.

### SECOND DEFENSE

In the event it is determined that the damages and injuries alleged in the Amended Complaint were proximately caused by acts and omissions of other individuals, Trident pleads the independent, superseding, and intervening acts or omissions of the other individuals as a defense to all claims herein.

### THIRD DEFENSE

Trident pleads as a defense to all claims herein the protections, rights, and limitations of recovery set forth in S.C. Code §15-38-15 and 15-38-20 et seq., applicable to joint and several liability and contribution.

### FOURTH DEFENSE

In the event Plaintiff receives or has received any settlements or other compensation or recovery for the claims, injuries, and damages alleged in the Amended Complaint, Trident is entitled to and hereby requests a set-off in the amount of said settlements and recovery to the extent allowed by law in the event that a judgment is entered in this action against Trident.

### FIFTH DEFENSE

ELECTRONICALLY FILED - 2020 Apr 17 12:45 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

If it is determined that Plaintiff is entitled to a recovery against Trident, which is specifically denied, Plaintiff's recovery should be reduced proportionally by the amount of Plaintiff's negligence (which would include any negligence by Greg Harris) should evidence of negligence on Plaintiff's part be developed in discovery. In the event that evidence is developed in discovery that Plaintiff's negligence is fifty percent or greater, Plaintiff should be barred from recovery altogether pursuant to S.C. Code §15-38-15.

## SIXTH DEFENSE

Should evidence of a failure by Plaintiff (which would include Greg Harris) to mitigate damages be developed during discovery, Trident pleads Plaintiff's failure to mitigate as a bar to all applicable claims and damages herein.

## SEVENTH DEFENSE

Trident pleads all applicable statutes of limitation and statutes of repose as an affirmative defense to all applicable claims herein, if any.

## EIGHTH DEFENSE

As a defense to Plaintiff's claim for punitive damages, Trident asserts that the allegations and evidence in this case do not rise to the level of aggravated conduct required to state and establish such a claim. In the alternative and in further response to Plaintiff's claim for punitive damages, Trident pleads and invokes the protections (including limits of recovery) afforded by S.C. Code §15-32-520 et seq. and §15-32-530 et seq. which are applicable to claims for punitive and exemplary damages including, but not limited to, the bifurcation of punitive damages claims. Trident also asserts, as a defense to Plaintiff's punitive damages claim, that an award of punitive damages as requested by Plaintiff herein would violate Trident's constitutional rights under the Constitutions of the United States and South Carolina.

ELECTRONICALLY FILED - 2020 Apr 17 12:45 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

## SUPPLEMENTAL DEFENSES

Trident reserves the right to amend its Answer to assert additional and supplemental defenses in the event additional defenses are determined to exist through discovery in this action.

WHEREFORE, having fully responded to the allegations of Plaintiff's Amended Complaint and having asserted the above-noted defenses, Trident Medical Center, LLC, requests and prays the Court as follows:

1.     That Plaintiff have and recover nothing from Trident by means of this action and that all claims herein against Trident be dismissed;

2.     That Trident recover its costs in this action, said costs to include reasonable attorney's fees and expenses as allowed by law;

3.     For such other and further relief as the Court deems just and proper; and

4.     For a trial by jury on all issues so triable herein

This 17th day of April, 2020.

BATTEN LEE PLLC


BY:     _____ s/David H. Batten _____
        Randolph L. Lee (S.C. State Bar No.: 74532)
        David H. Batten (S.C. State Bar No.: 74531)
        *Attorneys for Trident Medical Center, LLC*
        4141 Parklake Avenue
        Suite 350
        Raleigh, NC 27612
        Phone:  (919) 439-2221
        Fax: (919) 780-5382

ELECTRONICALLY FILED - 2020 Apr 17 12:45 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF CHARLESTON | C.A. No. 2020-CP-10-00906 |
| Greg Harris,<br>Plaintiff, | |
| v. | **CERTIFICATE OF SERVICE** |
| Andrew Cooper, Trident Medical Center, LLC d/b/a HCA South Atlantic and Allied Barton Security Services, LLC (also known as Allied Universal Security)<br>Defendants. | |

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this date a copy of the foregoing *Answer to Plaintiff's Amended Complaint* was duly served upon each party to this cause by Notice of Electronic Filing (NEF), properly addressed as follows:

Brice E. Ricker
Wigger Law Firm, Inc.
8086 Rivers Avenue, Suite A
North Charleston, SC  29406
*Attorneys for Plaintiff*

Ronald B. Diegel
Kerri A. Rupert
Timothy J. Caiello
Murphy & Grantland, PA
P.O. Box 6648
Columbia, SC  29260
*Attorneys for Defendant Andrew Cooper and AlliedBarton Security Service, LLC (d/b/a Allied Barton/Yale Enforcement Services) and Allied Universal Services*

This 17th day of April, 2020.

BATTEN LEE PLLC

BY: _____*s*/David H. Batten_____
Randolph L. Lee (S.C. State Bar No.: 74532)
David H. Batten (S.C. State Bar No.: 74531)
*Attorneys for Trident Medical Center, LLC*
4141 Parklake Avenue
Suite 350
Raleigh, NC 27612
Phone:  (919) 439-2221
Fax: (919) 780-5382

STATE OF SOUTH CAROLINA                                    IN THE COURT OF COMMON PLEAS
COUNTY OF CHARLESTON

## NOTICE OF ADR

Greg Harris                                                2020CP1000906

### PLAINTIFF(S)

                                                           Filing Date: February 19, 2020

**Vs**

Andrew Cooper
Trident Medical Center Llc
Allied Universal Security

### DEFENDANT(S)

Pursuant to the South Carolina Alternative Dispute Resolution Rules (SCADR), you are required to participate in the following methods of Alternative Dispute Resolution (ADR): mediation or arbitration (binding or non-binding); on or before 300 days from the date of filing of this action. The parties have a right to mutually agree upon the form of ADR and a neutral person(s) to conduct that ADR process. In the event the parties are unable to agree upon the form of ADR, the court hereby designates mediation as the default process of ADR. In the event the parties are unable to agree upon a mediator, the court hereby appoints

Daniel Alan Hunnicutt, PO Box 1735, , Conway, SC 29528, Phone (843) 488-2424

to serve as mediator. In the event the aforementioned mediator has a conflict of interest or is unable to serve, the alternate mediator is

Stephen E. Darling, 134 Meeting Street, 3Rd Floor, , Charleston, SC 29401, Phone (843) 720-4454

The parties and/or their lawyers shall contact the court-appointed mediator directly regarding scheduling and payment of the court-mandated fee.

A Rule to Show Cause why sanctions should not be imposed may be issued in all cases that fail to file a Proof of ADR or Exemption form indicating evidence of participation in or exemption from an ADR process within 300 days from the date of filing of the action or 90 days from the date of this notice 12/16/2020.

Date: September 9, 2020
Notice of this Order was given by First Class Mail, E-mail, Fax or by the E-Filing Notice of Electronic Filing (NEF). Pro-Se parties were notified by first class mail on 09/09/2020

**Plaintiff Attorney:**
Brice Eugene Ricker
8086 Rivers Avenue, Suite A
North Charleston, SC 29406

**Defendant Attorney:**

| | | |
|---|---|---|
| David H. Batten | Randolph L. Lee | Ronald Barton Diegel |
| 4141 Parklake Avenue | 4141 Parklake Avenue | PO Box 6648 |
| Ste. 350 | Suite 350 | Columbia, SC 29260 |
| Raleigh, NC 27612 | Raleigh, NC 27612 | |

ADR Coordinator
Caroline Leonard
(843) 958-5013
(843) 958-5020
ccleonard@charlestoncounty.org

CP18
SCADR 102 (11/2012)

ELECTRONICALLY FILED - 2020 Sep 09 9:38 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Greg Harris,
                                        *Plaintiff*,

v.

Andrew Cooper; Trident Medical Center,
LLC d/b/a HCA South Atlantic; AlliedBarton
Security Services, LLC (also known as Allied
Universal Security),

                                        *Defendants*.

IN THE COURT OF COMMON PLEAS

C.A. No. 2020-CP-10-00906

**CONSENT SCHEDULING ORDER**

This matter comes before this Court upon motion of all parties for entry of a Scheduling Order. For good cause shown, and with the consent of all parties, the following deadlines are established:

**IT IS HEREBY ORDERED THAT:**

1.      Mediation shall be completed by June 9, 2021.

2.      This case shall be set for a trial not before August 9, 2021.

3.      Any dates within this Order not affecting the trial date can be changed by written consent of all parties and all dates set forth herein are subject to amendment by future Order of the court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the dates set forth herein are subject to amendment only by future Order of this Court.

**IT IS SO ORDERED.**

        This is the _____ day of November, 2020.


_____

ELECTRONICALLY FILED - 2020 Nov 20 11:55 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Chief Administrative Judge for the Ninth Judicial Circuit

_____, 2020

_____, South Carolina

ELECTRONICALLY FILED - 2020 Nov 20 11:55 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2020 Nov 20 11:55 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

**WE CONSENT**:

WIGGER LAW FIRM                    MURPHY & GRANTLAND, PA


*s/Brice E. Ricker*                *s/Ronald B. Diegel*
Brice E. Ricker, Esquire          Ronald B. Diegel, Esquire
Wigger Law Firm                   Kerri A. Rupert, Esquie
8086 Rivers Avenue, Suite A       Timothy J. Caiello, Esquire
N. Charleston, SC 29406           Murphy & Grantland, PA
P: 843-553-9800                   P.O. Box 6648
F: 843-553-1648                   Columbia, SC 29260
bricker@wiggerlawfirm.com         P : 803-782-4100
*Attorney for Plaintiff*          F : 803-782-4140
                                  rbdiegel@murphygrantland.com
                                  karupert@murphygrantland.com
                                  tjcaiello@murphygrantland.com
                                  *Attorneys for Defendants Andrew Cooper and*
                                  *AlliedBarton Security Service, LLC (d/b/a Allied*
                                  *Barton/Yale Enforcement Services) and Allied*
                                  *Universal Services*


BATTEN LEE, PLLC


*s/Randolph L. Lee*
David Batten, Esquire
Randolph L. Lee, Esquire
Batten Lee, PLLC
4141 Parklake Avenue
Raleigh, NC 27612
P: 919-439-2221
F: 919-780-5382
dbatten@battenlee.com
rlee@battenlee.com
*Attorneys for Defendant Trident Medical Center,*
*LLC, d/b/a HCA South Atlantic*



Charleston Common Pleas

**Case Caption:**    Greg  Harris  VS Andrew  Cooper  , defendant, et al

**Case Number:**    2020CP1000906

**Type:**    Order/Scheduling Order

So Ordered

s/Jennifer B. McCoy #2764

Electronically signed on 2020-11-20 11:55:37    page 4 of 4

ELECTRONICALLY FILED - 2020 Nov 20 11:55 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2021 Jan 22 3:40 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Greg Harris,

Plaintiff,

v.

Andrew Cooper, Trident Medical Center, LLC, AlliedBarton Security Services, LLC, d/b/a AlliedBarton and Yale Enforcement Services n/k/a Allied Universal Services,

Defendants.

IN THE COURT OF COMMON PLEAS

C.A. No. 2020-CP-10-00906

**ANSWER OF TRIDENT MEDICAL CENTER, LLC TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

Trident Medical Center, LLC ("Trident"), by and through the undersigned counsel of record, Answers Plaintiff's Second Amended Complaint as follows:

**ANSWER TO SECOND AMENDED COMPLAINT**

1.     Answering Paragraph 1, Trident lacks sufficient information and knowledge to form a belief as to the truth of the allegations contained therein and said allegations are therefore denied.

2.     Answering Paragraph 2, these allegations are not directed to Trident and a response is not, therefore, required from Trident.  To the extent a response is required, Trident lacks sufficient information and knowledge to form a belief as to the truth of the allegations contained therein and said allegations are therefore denied.

3.     Answering Paragraph 3, it is admitted that Trident Medical Center, LLC, is a Delaware corporation with a principal place of business in Charleston County, South Carolina.  It is further admitted that Trident Medical Center, LLC, operates Trident Medical Center located in Charleston County, South Carolina.  Except as admitted, the allegations contained in Paragraph 3 are denied.

ELECTRONICALLY FILED - 2021 Jan 22 3:40 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

4.      Answering Paragraph 4, these allegations are not directed to Trident and a response is not, therefore, required from Trident.  To the extent a response is required, Trident lacks sufficient information and knowledge to form a belief as to the truth of the allegations contained therein and said allegations are therefore denied.

5.      Answering Paragraph 5, these allegations are not directed to Trident and a response is not, therefore, required from Trident.  To the extent a response is required, Trident lacks sufficient information and knowledge to form a belief as to the truth of the allegations contained therein and said allegations are therefore denied.

6.      Answering Paragraph 6, the allegations in this paragraph contain legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.

7.      Answering Paragraph 7, the allegations in this paragraph contain legal conclusions to which no response is required.  To the extent a response is required, the allegations are denied.

8.      Answering Paragraph 8, this answering Defendant is informed and believes the allegations contained in Paragraph 8 of the Second Amended Complaint refer to events detailed in Plaintiff's medical records.  Those referenced medical records are in writing and speak for themselves with respect to their content.  Further reference is made to specific testimony of witnesses involved for a complete description of their involvement, the timing thereof, and an appropriate interpretation of the medical records.  To the extent the allegations contained in Paragraph 8 are consistent with the written documents and said testimony of witnesses, the same are admitted; otherwise, the allegations contained in Paragraph 8 are denied.  It is specifically

ELECTRONICALLY FILED - 2021 Jan 22 3:40 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

admitted that Trident Medical Center is located at 9330 Medical Plaza Drive, North Charleston, South Carolina.  Except as admitted, the allegations are denied.

9. Answering Paragraph 9, this answering Defendant is informed and believes the allegations contained in Paragraph 9 of the Amended Complaint refer to events detailed in Plaintiff's medical records.  Those referenced medical records are in writing and speak for themselves with respect to their content.  Further reference is made to specific testimony of witnesses involved for a complete description of their involvement, the timing thereof, and an appropriate interpretation of the medical records.  To the extent the allegations contained in Paragraph 9 are consistent with the written documents and said testimony of witnesses, the same are admitted; otherwise, the allegations contained in Paragraph 9 are denied.  Except as admitted, the allegations are denied.

10.     Answering Paragraph 10, the allegations of this Paragraph appear directed to another Defendant, therefore no response is required from this Defendant.  To the extent a response is required, the allegations are denied.  It is specifically denied that Defendant Cooper was an employee or agent of Trident at any time relevant to the events in the Complaint. It is specifically admitted that Trident Medical Center, LLC, had an independent contractor relationship with Yale Enforcement Services, Inc., to provide security services at Trident during the time in issue.  Except as specifically admitted, the allegations are denied.

11.     Answering Paragraph 11, the allegations of this Paragraph appear directed to another Defendant, therefore no response is required from this Defendant.  To the extent a response is required, the allegations are denied.

ELECTRONICALLY FILED - 2021 Jan 22 3:40 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

12.     Answering Paragraph 12, the allegations of this Paragraph appear directed to another Defendant, therefore no response is required from this Defendant.  To the extent a response is required, the allegations are denied.

13.     Answering Paragraph 13, the allegations of this Paragraph appear directed to another Defendant, therefore no response is required from this Defendant.  To the extent a response is required, the allegations are denied.

14.     Answering Paragraph 14, Defendant lacks sufficient knowledge and information to form a belief as to the truth of these allegations and said allegations are therefore denied.

15.     Answering Paragraph 15, it is specifically admitted that the Plaintiff received additional treatment at Trident.  Except as specifically admitted, the allegations are denied.

16.     Answering Paragraph 16, some of the allegations of this Paragraph appear directed to another Defendant, therefore no response is required from this Defendant.  To the extent a response is required, the allegations are denied for a lack of information and belief.  It is admitted that Trident Medical Center, LLC, had an independent contractor relationship with Yale Enforcement Services, Inc., to provide security services at Trident.  It is specifically denied that Defendant Cooper was an employee or agent of Trident at any time relevant to the events in the Complaint.  Except as specifically admitted, the allegations are denied.

17.     Answering Paragraph 17, it is specifically denied that Defendant Cooper was acting within the course and scope of his employment with Trident as he was not an employee or agent of Trident at any time relevant to the events in the Complaint.  Except as specifically admitted, the allegations are denied.

18.     Answering Paragraph 18, denied.

19.      Answering Paragraph 19, Trident incorporates by reference, as if fully set forth herein, its responses to the preceding paragraphs and allegations of the Amended Complaint.

20.      Answering Paragraph 20, the allegations contained in Paragraph 20 including subparts (a) through (f) are denied.

21-22.  Answering Paragraphs 21-22, the allegations contained therein are denied.

23.      Answering Paragraph 23, Trident incorporates by reference, as if fully set forth herein, its responses to the preceding paragraphs and allegations of the Amended Complaint.

24.      Answering Paragraph 24, the allegations contained therein are denied.

25.      Answering Paragraph 25, the allegations contained therein are denied.

26-31.   Answering Paragraphs 26-31, the allegations contained therein are denied.

32.      Answering Paragraph 32, Trident incorporates by reference, as if fully set forth herein, its responses to the preceding paragraphs and allegations of the Amended Complaint.

33-39.  Answering Paragraphs 33-39, the allegations contained therein are denied.

40.      Answering Paragraph 40, Trident incorporates by reference, as if fully set forth herein, its responses to the preceding paragraphs and allegations of the Amended Complaint.

41.      Answering Paragraph 41, the allegations contained therein are denied.

42.      Answering Paragraph 42, the allegations contained in Paragraph 42 including subparts (1) through (8) are denied.

43-44.  Answering Paragraph 43-44, the allegations contained therein are denied.

45.      Answering Paragraph 45, Trident incorporates by reference, as if fully set forth herein, its responses to the preceding paragraphs and allegations of the Amended Complaint.

46-49.  Answering Paragraphs 46-49, the allegations contained therein are denied.

ELECTRONICALLY FILED - 2021 Jan 22 3:40 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2021 Jan 22 3:40 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

**EACH AND EVERY ALLEGATION OF PLAINTIFF'S SECOND AMENDED COMPLAINT, INCLUDING THE ALLEGATIONS OF PLAINTIFF'S PRAYER FOR RELIEF, NOT HEREIN EXPLICITLY ADMITTED IS DENIED.**

### ADDITIONAL DEFENSES

As additional defenses, Trident pleads as follows:

### FIRST DEFENSE

Plaintiff's alleged damages and injuries were not proximately caused by any acts or omissions of Trident.

### SECOND DEFENSE

In the event it is determined that the damages and injuries alleged in the Second Amended Complaint were proximately caused by acts and omissions of other individuals, Trident pleads the independent, superseding, and intervening acts or omissions of the other individuals as a defense to all claims herein.

### THIRD DEFENSE

Trident pleads as a defense to all claims herein the protections, rights, and limitations of recovery set forth in S.C. Code §15-38-15 and 15-38-20 et seq., applicable to joint and several liability and contribution.

### FOURTH DEFENSE

In the event Plaintiff receives or has received any settlements or other compensation or recovery for the claims, injuries, and damages alleged in the Second Amended Complaint, Trident is entitled to and hereby requests a set-off in the amount of said settlements and recovery to the extent allowed by law in the event that a judgment is entered in this action against Trident.

### FIFTH DEFENSE

ELECTRONICALLY FILED - 2021 Jan 22 3:40 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

If it is determined that Plaintiff is entitled to a recovery against Trident, which is specifically denied, Plaintiff's recovery should be reduced proportionally by the amount of Plaintiff's negligence (which would include any negligence by Greg Harris) should evidence of negligence on Plaintiff's part be developed in discovery. In the event that evidence is developed in discovery that Plaintiff's negligence is fifty percent or greater, Plaintiff should be barred from recovery altogether pursuant to S.C. Code §15-38-15.

## SIXTH DEFENSE

Should evidence of a failure by Plaintiff (which would include Greg Harris) to mitigate damages be developed during discovery, Trident pleads Plaintiff's failure to mitigate as a bar to all applicable claims and damages herein.

## SEVENTH DEFENSE

Trident pleads all applicable statutes of limitation and statutes of repose as an affirmative defense to all applicable claims herein including that Plaintiff's allegations of wrongful detention/false arrest is time barred by the applicable South Carolina Statue of Limitations found in S.C. Code § 15-3-550 and must be dismissed.

## EIGHTH DEFENSE

As a defense to Plaintiff's claim for punitive damages, Trident asserts that the allegations and evidence in this case do not rise to the level of aggravated conduct required to state and establish such a claim. In the alternative and in further response to Plaintiff's claim for punitive damages, Trident pleads and invokes the protections (including limits of recovery) afforded by S.C. Code §15-32-520 et seq. and §15-32-530 et seq. which are applicable to claims for punitive and exemplary damages including, but not limited to, the bifurcation of punitive damages claims. Trident also asserts, as a defense to Plaintiff's punitive damages claim, that an award of punitive

ELECTRONICALLY FILED - 2021 Jan 22 3:40 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

damages as requested by Plaintiff herein would violate Trident's constitutional rights under the Constitutions of the United States and South Carolina.

## SUPPLEMENTAL DEFENSES

Trident reserves the right to amend its Answer to assert additional and supplemental defenses in the event additional defenses are determined to exist through discovery in this action.

WHEREFORE, having fully responded to the allegations of Plaintiff's Second Amended Complaint and having asserted the above-noted defenses, Trident Medical Center, LLC, requests and prays the Court as follows:

1.    That Plaintiff have and recover nothing from Trident by means of this action and that all claims herein against Trident be dismissed;

2.    That Trident recover its costs in this action, said costs to include reasonable attorney's fees and expenses as allowed by law;

3.    For such other and further relief as the Court deems just and proper; and

4.    For a trial by jury on all issues so triable herein

This 22nd day of January, 2021.

BATTEN LEE PLLC


BY:    *s/Randolph L. Lee*
       Randolph L. Lee (S.C. State Bar No.: 74532)
       David H. Batten (S.C. State Bar No.: 74531)
       Matthew D. Mariani (S.C. State Bar No.: 102141)
       *Attorneys for Trident Medical Center, LLC*
       4141 Parklake Avenue
       Suite 350
       Raleigh, NC 27612
       Phone:  (919) 439-2221
       Fax: (919) 780-5382
       E-mail:  rlee@battenlee.com
       E-mail:  dbatten@battenlee.com

E-mail:  mmariani@battenlee.com

ELECTRONICALLY FILED - 2021 Jan 22 3:40 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2021 Jan 22 3:40 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this date a copy of the foregoing *Defendant Trident Medical Center, LLC's Answer* was duly served upon each known party to this cause by Notice of Electronic Filing (NEF), properly addressed as follows:

Brice E. Ricker
Wigger Law Firm, Inc.
8086 Rivers Avenue, Suite A
North Charleston, SC  29406
*Attorney for Plaintiff*

Ronald B. Diegel
Kerri A. Rupert
Timothy J. Caiello
Murphy & Grantland, P.A.
P.O. Box 6648
Columbia, SC 29260
*Attorneys for Defendant Andrew Cooper and Allied Barton Security Service, LLC d/b/a Allied Barton/Yale Enforcement Services n/k/a Allied Universal Services*

This 22nd day of January, 2021.

BATTEN LEE PLLC


BY:    *s/Randolph L. Lee*_____
        Randolph L. Lee (S.C. State Bar No.: 74532)
        David H. Batten (S.C. State Bar No.: 74531)
        Matthew D. Mariani (S.C. State Bar No.: 102141)
        *Attorneys for Trident Medical Center, LLC*
        4141 Parklake Avenue, Suite 350
        Raleigh, North Carolina 27612
        Phone:  (919) 439-2221
        Fax: (919) 780-5382
        E-mail:  rlee@battenlee.com
        E-mail:  dbatten@battenlee.com
        E-mail:  mmariani@battenlee.com

ELECTRONICALLY FILED - 2021 Feb 03 3:36 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS

CIVIL ACTION NO:   2020-CP-10-00906

Greg Harris

Plaintiff,

v.

Andrew Cooper, Trident Medical Center d/b/a HCA South Atlantic and Allied Barton Security Service, LLC, d/b/a AlliedBarton and Yale Enforcement Services n/k/a Allied Universal Services

Defendants.

**ANSWER OF DEFENDANTS ANDREW COOPER AND ALLIED BARTON SECURITY SERVICE, LLC (D/B/A ALLIEDBARTON/YALE ENFORCEMENT SERVICES) AND ALLIED UNIVERSAL SERVICES TO PLAINTIFF'S SECOND AMENDED COMPLAINT**

**(Jury Trial Demanded)**

**TO:  BRICE E. RICKER, ESQUIRE, ATTORNEY FOR PLAINTIFF AND TO THE PLAINTIFF ABOVE NAMED:**

The Defendants Andrew Cooper and Allied Barton Security Services, LLC (d/b/a AlliedBarton/ Yale Enforcement Services) and Allied Universal Security (and now presently known as "Allied Universal") herein file their Answer to the Plaintiff's Second Amended Complaint and would respectfully show as follows:

**FOR A FIRST DEFENSE**

1.      Each and every allegation of the Plaintiff's Second Amended Complaint not hereinafter admitted is expressly denied.

**FOR A SECOND DEFENSE**

2.      Allied Barton Security Services, LLC (d/b/a AlliedBarton/Yale Enforcement Services) and Allied Universal Services (now presently known as "Allied Universal" and collectively referred  to as "Allied Universal" for all purposes hereafter) and Andrew Cooper

ELECTRONICALLY FILED - 2021 Feb 03 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

would admit that Allied Universal is a limited liability company organized and existing under the laws of Delaware and would further admit that Allied Universal did business in the State of South Carolina, in the county of Charleston; the Defendant Andrew Cooper would admit that at all times relevant hereto he was an employee of Defendant Allied Universal; all remaining allegations of the Plaintiff's Second Amended Complaint are again denied.

## **FOR A THIRD DEFENSE**

3.      The Defendants Allied Universal and Andrew Cooper would show, upon information and belief, that any injuries or damages sustained by the Plaintiff, which are specifically denied, were the result of the acts or omissions of others not in the employ or control of these Defendants and, therefore, the Plaintiff cannot recover from these Defendants in any sum whatsoever.

## **FOR A FOURTH DEFENSE**

4.      The Defendants would herein show that the Plaintiff's Second Amended Complaint fails to state facts sufficient to constitute a cause of action pursuant to *Rule 12(b)(6) of the South Carolina Rules of Civil Procedure* and, therefore, the Plaintiff's Amended Complaint must be dismissed in whole or in part.

## **FOR A FIFTH DEFENSE**

5.      The Defendants would herein show that the Plaintiff's Second Amended Complaint alleging wrongful detention/false arrest is time barred by the applicable South Carolina Statute of Limitation found in South Carolina Code of Laws Section 15-3-550 and, accordingly, the Plaintiff's Amended Complaint must be dismissed in whole or in part.

ELECTRONICALLY FILED - 2021 Feb 03 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

**FOR A SIXTH DEFENSE**

6.    The Defendants reserve the right to move to amend their Answer based upon motion timely made once the process of discovery and depositions has been completed should additional defenses become known or warranted.

**FOR A SEVENTH DEFENSE**

7.    The Defendants would show, upon information and belief, that at the time of Plaintiff's alleged detention reasonable cause existed based on facts and circumstances then known and, accordingly, the Plaintiff cannot recover from the Defendants in any sum whatsoever.

**FOR AN EIGHTH DEFENSE**

8.    The Defendants would show, upon information and belief, that any actions or statements on the part of Allied Universal and/or its agents or employees were reasonable with respect to the time, place and manner of any occurrence and were in furtherance of the Defendant Allied's legitimate business interests, and, therefore, any alleged actions or statements were taken or made in good faith and the Plaintiff cannot recover from the Defendants in any sum whatsoever

**FOR A NINTH DEFENSE**

9.    The Defendants Allied Universal and Andrew Cooper would show, upon information and belief, that the injuries sustained by the Plaintiff were the result of the sole negligence of the Plaintiff and therefore, the Plaintiff cannot recover any sum whatsoever from the Defendants.

**FOR A TENTH DEFENSE**

10.    The Defendants Allied Universal and Andrew Cooper would show, upon information and belief, that any injuries or damages sustained by the Plaintiff were due to his own negligent, careless, reckless and grossly negligent acts or omissions which combined and concurred with any negligence on the part of the Defendants, which is specifically denied, to

ELECTRONICALLY FILED - 2021 Feb 03 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

produce such injuries or damages, if any, and without which such injuries or damages would not have occurred. The Defendants plead such negligence, carelessness, recklessness and gross negligence on the part of the Plaintiff and would ask that this Court compare the negligence of the Plaintiff and the Defendants and if it is determined that the Plaintiff's negligence, carelessness, recklessness and gross negligence was greater than the negligence, carelessness, recklessness and gross negligence of the Defendants, which is specifically denied, then the Plaintiff should be totally barred from recovery and if it is determined that the Plaintiff's negligence, carelessness, recklessness and gross negligence is equal to or less than the negligence of the Defendants, then the amount of recovery available to the Plaintiff should be reduced by the percentage of the Plaintiff's own negligence, carelessness, recklessness and gross negligence.

**FOR AN ELEVENTH DEFENSE**

11.    Pursuant to S.C. Code Ann. §15-32-520, any proceeding to determine punitive damages should be bifurcated from any trial to determine liability and compensatory damages.

**FOR A TWELFTH DEFENSE**

12.    Any award of punitive damages should not exceed the greater of three (3) times the amount of compensatory damages as provided for in S.C. Code Ann. §15-32-530, or as set forth in the further provisions of §15-32-530.

**FOR A THIRTEENTH DEFENSE**

13.    The Defendants Allied Universal and Andrew Cooper would show, upon information and belief, that the Plaintiff's claim for punitive damages violates the Fifth, Sixth, Seventh, Eighth and Fourteenth Amendments to the Constitution of the United States of America in that it violates the double jeopardy clause in that these Defendants could be subjected to multiple awards of punitive damages for the same set of facts; the self-

ELECTRONICALLY FILED - 2021 Feb 03 3:38 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

incrimination clause is being violated because these Defendants can be compelled to give testimony against themselves in a penalty situation such as punitive damages; the assessment of punitive damages by a burden of proof less than beyond a reasonable doubt is violative of the Sixth and Fourteenth Amendments in that punitive damages are a fine or penalty and are, therefore, quasi-criminal in nature; Plaintiff's claim for punitive damages violates these Defendants' right to access the courts as guaranteed by the Seventh and Fourteenth Amendments because the threat of an award of punitive damages chills these Defendants' exercise of that right; the Plaintiff's claim for punitive damages violates the Eighth Amendment's guarantee that excessive fines shall not be imposed, the Plaintiff's claim for punitive damages violates both the due process and equal protection clauses of the Fourteenth Amendment in that the standard for awarding either punitive damages is unduly vague and, therefore, violates both procedural and substantive due process safeguards; therefore, the Plaintiff's claim for punitive damages should be dismissed.

**Wherefore**, having fully answered the Plaintiff's Second Amended Complaint, the Defendants Allied Universal and Andrew Cooper would pray that the same be dismissed with costs being granted to them. The Defendants also pray for such other and further relief as the court deems just and proper, and also demand a trial by jury.

*Respectfully submitted,*

MURPHY & GRANTLAND, P.A.

*s/Ronald B. Diegel*
Ronald B. Diegel, Esquire
Timothy J. Caiello, Esquire
4406-B Forest Drive (29206)
P.O. Box 6648
Columbia, South Carolina 29260
(803) 782-4100

**Attorneys for Defendant Andrew Cooper and
AlliedBarton Security Service, LLC (d/b/a
AlliedBarton/Yale Enforcement Services) and
Allied Universal Services**

Columbia, South Carolina
February 3, 2021

ELECTRONICALLY FILED - 2021 Feb 03 3:36 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2021 May 11 10:20 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS

CIVIL ACTION NO:   2020-CP-10-00906

| | |
|---|---|
| Greg Harris | |
| Plaintiff, | **CONSENT SCHEDULING ORDER** |
| v. | |
| Andrew Cooper, Trident Medical Center, LLC, AlliedBarton Security Services, LLC d/b/a AlliedBarton and Yale Enforcement Services n/k/a Allied Universal Services | |
| Defendants. | |

It appearing to the Court that the parties are engaged in ongoing discovery and depositions and following the completion of discovery and depositions wish to engage in mediation,

And it further appearing that the parties wish to establish a reasonable time frame for the mediation and trial of this case, and that the parties have agreed to the following:

1) The mediation deadline be extended to August 31, 2021.

Accordingly, by and with the consent of all parties through their counsel this Consent Scheduling Order shall be entered and the parties shall comply therewith.

AND IT IS SO ORDERED.

_____

Chief Administrative Judge for the Ninth Judicial Circuit

_____, 2021

ELECTRONICALLY FILED - 2021 May 11 10:20 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

**WE CONSENT**:


_s/Brice E. Ricker_
Brice E. Ricker, Esquire
Wigger Law Firm
8086 Rivers Avenue, Suite A
N. Charleston, SC 29406
Phone: 843-553-9800
Fax: 843-553-1648
bricker@wiggerlawfirm.com
_Attorney for Plaintiff_

_s/Ronald B. Diegel_
Ronald B. Diegel, Esquire
Timothy J. Caiello, Esquire
Murphy & Grantland, PA
P.O. Box 6648
Columbia, SC 29260
Phone: 803-782-4100
Fax: 803-782-4140
rbdiegel@murphygrantland.com
tjcaiello@murphygrantland.com
_Attorneys for Defendants Andrew Cooper,_
_AlliedBarton Security Services, LLC d/b/a_
_AlliedBarton and Yale Enforcement Services n/k/a_
_Allied Universal Services_


_s/Randolph L. Lee_
Randolph L. Lee, Esquire
David H. Batten, Esquire
Matthew Mariani, Esquire
Batten Lee PLLC
4141 Parklake Avenue, Suite 350
Raleigh, NC 27612
Phone: 919-439-2221
Fax: 919-780-5382
dbatten@battenlee.com
rlee@battenlee.com
mmariani@battenlee.com
_Attorneys for Defendant Trident Medical Center,_
_LLC_



Charleston Common Pleas

**Case Caption:**    Greg  Harris VS Andrew  Cooper , defendant, et al

**Case Number:**    2020CP1000906

**Type:**    Order/Scheduling Order

It is so ordered.

/s Roger M. Young, Sr. S.C. Circuit Judge 2134

Electronically signed on 2021-05-11 10:19:52    page 3 of 3

ELECTRONICALLY FILED - 2021 May 11 10:20 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2021 Oct 14 7:59 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| | ) FOR THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) |
| | ) |
| | ) PROOF OF ADR |
| Greg Harris, | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) Docket No. 2020-CP-10-00906 |
| Andrew Cooper, Trident Medical Center, | ) |
| LLC d/b/a HCA South Atlantic, AlliedBarton | ) |
| Security Services, LLC d/b/a AlliedBarton | ) |
| and Yale Enforcement Services n/k/a Allied | ) |
| Universal Services, | ) |
| Defendant. | ) |

*(Within 10 days of the conclusion of ADR and no later than 300 days after filing, an original must be filed with the Clerk of Court and a copy forwarded to the attorneys for the parties.)*

PURSUANT to the South Carolina Alternative Dispute Resolutions Rules (SCADR):

1. Alternative Dispute Resolution (ADR) was conducted on the 10th day of August, 2021 in the form of
   a. __X__ mediation
   b. _____ non-binding arbitration
   c. _____ binding arbitration (attached appropriate order of dismissal)

2. The neutral(s) was/were (Name(s) of arbitrator(s)/mediator(s)) Thomas J. Wills, IV _____
   _____

3. Present at the ADR conference were:
   a. __✓__ Plaintiff
   b. __✓__ Defendant
   c. __✓__ Lawyer(s) for Plaintiff_____
   d. __✓__ Lawyer(s) for Defendant_____
   e. __✓__ Representative for Insurance Carrier_____
   f. _____ Guardian *ad litem* _____
   g. _____ Expert(s) _____
   h. _____ Others _____

4. As a result of ADR, this case should be considered (check one)
   a. _____ fully settled by Consent Judgment to be filed by _____
   b. _____ fully settled Voluntary Dismissal to be filed by _____
   c. __✓__ Partially settled — settled as to Trident Medical Center, LLc HCA South Atlantic
   d. _____ at an impasse

Submitted this __10__ day of_____ August, 2021

_____
Neutral's Signature

ELECTRONICALLY FILED - 2021 Nov 30 9:48 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS

CIVIL ACTION NO:   2020-CP-10-00906

Greg Harris
                              Plaintiff,

v.

Andrew Cooper, Trident Medical Center d/b/a
HCA South Atlantic and Allied Barton
Security Service, LLC, d/b/a AlliedBarton and
Yale Enforcement Services n/k/a Allied
Universal Services,

                              Defendants.

**CONSENT SCHEDULING ORDER**

It appearing to the Court that mediation has recently been completed and that the parties now wish to engage in medical and/or expert discovery, depositions of any out of state witnesses and to complete discovery necessary for preparation of the case for trial,

And it further appearing that the parties wish to establish a reasonable time frame for the completion of this needed discovery and then the trial of this case, and that the parties have agreed to the following:

1) The trial of this case will not be before June 1, 2022.

Accordingly, by and with the consent of all parties through their counsel this Consent Scheduling Order shall be entered, and the parties shall comply therewith.

AND IT IS SO ORDERED.

_____

Chief Administrative Judge for the Ninth Judicial Circuit

_____, 2021

ELECTRONICALLY FILED - 2021 Nov 30 9:48 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

**WE CONSENT**:


*s/Brice E. Ricker*
Smith Ammons, LLC
1668 Old Trolley Road, Suite 104
Summerville, SC 29485
bricker@smithammonslaw.com
Phone: 843-900-2020
*Attorney for Plaintiff*

*s/Ronald B. Diegel*
Ronald B. Diegel, Esquire
Timothy J. Caiello, Esquire
Murphy & Grantland, PA
P.O. Box 6648
Columbia, SC 29260
Phone: 803-782-4100
Fax: 803-782-4140
rbdiegel@murphygrantland.com
tjcaiello@murphygrantland.com
*Attorneys for Defendants Andrew Cooper,*
*AlliedBarton Security Services, LLC d/b/a*
*AlliedBarton and Yale Enforcement Services n/k/a*
*Allied Universal Services*



Charleston Common Pleas

**Case Caption:**     Greg  Harris VS Andrew  Cooper , defendant, et al

**Case Number:**     2020CP1000906

**Type:**     Order/Scheduling Order

It is so ordered.

/s Roger M. Young, Sr. S.C. Circuit Judge 2134

Electronically signed on 2021-11-30 09:48:02     page 3 of 3

ELECTRONICALLY FILED - 2021 Nov 30 9:48 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2022 May 31 5:24 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Greg Harris,

                                    Plaintiff,

v.

Andrew Cooper, AlliedBarton Security
Services, LLC d/b/a AlliedBarton and Yale
Enforcement Services n/k/a Allied Universal
Services,

                                    Defendants.

IN THE COURT OF COMMON PLEAS

CIVIL ACTION NO:  2020-CP-10-00906

**DEFENDANTS' ANDREW COOPER,
ALLIEDBARTON SECURITY SERVICES,
LLC D/B/A ALLIEDBARTON AND YALE
ENFORCEMENT SERVICES N/K/A ALLIED
UNIVERSAL MOTION FOR SUMMARY
JUDGMENT**

**TO:     BRICE E. RICKER, ESQUIRE, ATTORNEY FOR THE PLAINTIFF, AND TO
          THE PLAINTIFF ABOVE-NAMED:**

**YOU WILL PLEASE TAKE NOTICE** that the undersigned, as attorneys for the

Defendants, Andrew Cooper, AlliedBarton Security Services, LLC d/b/a AlliedBarton and Yale

Enforcement Services n/k/a Allied Universal Services, will move before the presiding judge of

the Charleston County Court of Common Pleas at the Charleston County Courthouse at 10:00

a.m. on the tenth (10th) day after service hereof, or as soon thereafter as counsel may

conveniently be heard, for an Order granting summary judgment in favor of the Defendants,

Andrew Cooper, AlliedBarton Security Services, LLC d/b/a AlliedBarton and Yale Enforcement

Services n/k/a Allied Universal Services, on grounds that Plaintiff's wrongful detention/false

arrest claim is time barred by the applicable statute of limitation found in SC Code of laws 15-5-

550 (1).  Additionally, the Plaintiff's intentional infliction of emotional distress/outrage claim

should be dismissed as it is based upon the allegations of the time barred wrongful

detention/false arrest claim and, as an additional grounds, fails as a matter of law.

This Motion is made pursuant to Rule 56 of the <u>South Carolina Rules of Civil Procedure</u>

1

ELECTRONICALLY FILED - 2022 May 31 5:24 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

and will be supplemented and supported by such affidavits, depositions, discovery responses, memoranda of law, and such other documents as appropriate.

Respectfully submitted,

MURPHY & GRANTLAND, P.A.

_s/Ronald B. Diegel_
Ronald B. Diegel, Esquire
Timothy J. Caiello, Esquire
4406-B Forest Drive (29206)
P.O. Box 6648
Columbia, South Carolina 29260
(803) 782-4100
**Attorneys for Defendants**

Columbia, South Carolina
May 31, 2022

2

ELECTRONICALLY FILED - 2022 Jun 03 11:10 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Greg Harris,

                              Plaintiff,

v.

Andrew Cooper, Trident Medical Center, LLC,
AlliedBarton Security Services, LLC, d/b/a
AlliedBarton and Yale Enforcement Services
n/k/a Allied Universal Services,

                              Defendants.

IN THE COURT OF COMMON PLEAS

C.A. No. 2020-CP-10-00906

**STIPULATION OF DISMISSAL**

Pursuant to the provisions of Rule 41(a)(1)(B) of the South Carolina Rules of Civil Procedure Plaintiff hereby stipulates and it is hereby agreed by and between the parties hereto that all claims against Defendant, Trident Medical Center, LLC, by Plaintiff, Greg Harris, in the above-referenced matter are hereby dismissed in the above-referenced lawsuit **with prejudice**.

This the 3rd  day of June 2022

**WE STIPULATE:**

s/Brice E. Ricker
Brice E. Ricker, Esq.
Attorney for the Plaintiff
S.C. Bar #: 101843
1668 Old Trolley Road, Suite 104
Summerville, SC 29485
Phone No.: (843) 900-2020
Fax No.: (888) 247-0844
Email:  bricker@smithammonslaw.com


_____s/ Randolph L. Lee_____
Randolph L. Lee (S.C. State Bar No.:74532)
David H. Batten (S.C. State Bar No.: 74531)
Matthew D. Mariani (S.C. State Bar No.: 102141)
Batten Lee, PLLC
*Attorneys for Trident Medical Center, LLC*

4141 Parklake Avenue, Suite 350
Raleigh, NC 27612
Phone: (919) 439-2221
Fax: (919) 780-5382
E-mail:  rlee@battenlee.com
E-mail:  dbatten@battenlee.com
E-mail:  mmariani@battenlee.com

ELECTRONICALLY FILED - 2022 Jun 03 11:10 AM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2022 Jun 09 3:18 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

IN THE STATE OF SOUTH CAROLINA
COUNTY OF CHARLESTON

Greg Harris,

       Plaintiff,

         v.

Andrew Cooper, Trident Medical Center d/b/a
HCA South Atlantic and Allied Barton Security
Service, LLC, d/b/a AlliedBarton and Yale
Enforcement Services n/k/a Allied Universal
Services,

       Defendants.

IN THE COURT OF COMMON PLEAS

CASE NUMBER: 2020-CP-10-00906

**CONSENT SCHEDULING ORDER**

It appearing to the Court that mediation has been completed and that the parties now wish to engage in medical and/or expert depositions and any out of state witnesses and to complete discovery necessary for preparation of the case for trial.

And it further appearing that the parties wish to establish a reasonable time frame for the completion of these needed depositions and then the trial of this case, and that the parties have agreed to the following:

1.  This case shall be subject to trial on or after December 1, 2022.

Accordingly, by and with the consent of all parties through their counsel this Consent Scheduling Order shall be entered, and the parties shall comply therewith.

IT IS SO ORDERED.

_____
Chief Administrative Judge for the Ninth Judicial
Circuit


_____, 2022

**WE CONSENT:**

**s/ Brice E. Ricker**
Smith Ammons Howle and Ricker, LLC
1668 Old Trolley Road, Suite 104
Summerville, SC 29485
Phone No.: (843) 900-2020
Fax No.: (888) 247-0844
Email:  bricker@smithammonslaw.com
*Attorney for the Plaintiff*

**WE CONSENT:**

**s/ Ronald B. Diegel**
Ronald B. Diegel, Esquire
Murphy & Grantland, PA
P.O. Box 6648
Columbia, SC 29260
Phone: 803-782-4100
Fax: 803-782-4140
rbdiegel@murphygrantland.com
*Attorneys for Defendants Andrew Cooper, AlliedBarton*
*Security Services, LLC d/b/a AlliedBarton and*
*Yale Enforcement Services n/k/a Allied Universal Services*

ELECTRONICALLY FILED - 2022 Jun 09 3:18 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2022 Jun 09 3:18 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906



Charleston Common Pleas

**Case Caption:**      Greg  Harris VS Andrew  Cooper , defendant, et al

**Case Number:**      2020CP1000906

**Type:**                  Order/Consent Order

So Ordered

s/Jennifer B. McCoy #2764

Electronically signed on 2022-06-09 12:31:10      page 3 of 3

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

Greg Harris,

                                        Plaintiff,

v.

Andrew Cooper, AlliedBarton Security
Services, LLC d/b/a AlliedBarton and Yale
Enforcement Services n/k/a Allied Universal
Services,

                                        Defendants.

IN THE COURT OF COMMON PLEAS

CIVIL ACTION NO:  2020-CP-10-00906


**DEFENDANTS' JOINT
MEMORANDUM OF LAW IN
SUPPORT OF THEIR JOINT MOTION
FOR SUMMARY JUDGMENT**


Defendants Andrew Cooper (hereinafter "Defendant Cooper"), AlliedBarton Security Services, LLC d/b/a AlliedBarton (hereinafter "Defendant AlliedBarton"), and Yale Enforcement Services n/k/a Allied Universal Services (hereinafter "Defendant Allied Universal") (collectively the "Defendants"), by and through their undersigned attorneys, and pursuant to South Carolina Rule of Civil Procedure 56, hereby file this joint Memorandum of Law in support of their joint Motion for Summary Judgment.

Defendants are entitled to summary judgment as to Plaintiff's cause of action entitled "wrongful detention/false arrest" because it is timed barred by S.C. Code § 15-3-550 (1), which provides a two-year limitation to commence a "false imprisonment" cause of action. The alleged incident between Plaintiff and Defendants occurred on March 28, 2017. Thus, Plaintiff's false imprisonment claim expired on March 29, 2019. However, Plaintiff did not commence this action until February 19, 2020, nearly one year after the cause of action expired. Accordingly, Plaintiff's false imprisonment claim must be dismissed.

Further, Defendants are entitled to summary judgment as to Plaintiff's cause of action entitled "intentional infliction of emotional distress/outrage" on the grounds that it simply

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

recharacterizes the same allegations of the false arrest claim, which is time barred, to support his intentional infliction of emotional distress claim (hereinafter "IIED"). Thus, Plaintiff's IIED claim is merely a disguised false improvement claim and must be dismissed because it is time-barred by the applicable statute of limitation. Therefore, for these reasons and for the explanations that follow, Defendants' joint Motion for Summary Judgment should be granted.

## **BACKGROUND**

This is a personal injury case in which Plaintiff alleges he was injured on March 28, 2017, after he underwent knee replacement surgery and refused medical advice by belligerently exiting Trident Medical Center because of an argument with medical staff regarding his medications. (Dep. G. Harris pp. 61-62; Dep. Bechtold pp. 14-15; Dep. Hourihan p. 14). As he was exiting the elevator on the ground floor of the hospital, Plaintiff was met by Defendant Cooper and other hospital personnel, who attempted to persuade him to return to his room for further recovery. (Dep. Cerroni pp. 35-36). Plaintiff became further enraged and began swinging his walker and fists at Defendant Cooper and other hospital personnel in an attempt to cause them harm. (Dep. Cerroni pp. 11, 36-37: Dep. Moore p. 19).

As Plaintiff continued to exit the hospital towards the main entrance doors, and while Officer Cooper kept pace, Plaintiff ripped the IV from his arm. (Dep. G. Harris p. 139-140; Dep. Cerroni pp. 11-12, 49). Plaintiff then reached the main entrance doors and as Officer Cooper continued to persuade Plaintiff to return to his hospital room, Plaintiff lunged forward and grabbed Defendant Cooper's shirt collar and began to aggressively twist it. (Dep. Cerroni pp. 18-21; 52-54, 60). In response, Defendant Cooper raised his arm in a defensive manner and pushed Plaintiff against the hospital wall to create separation. (Dep. Cerroni p. 60; Dep. Mack p. 16). After this altercation, Plaintiff exited the hospital, stood outside his vehicle, and smoked a cigarette until

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Plaintiff's wife and other hospital personnel convinced him to return to his hospital room. (Dep. Hourihan pp. 19-20).

On February 19, 2020, nearly three years after the underlying incident took place, Plaintiff filed his Summons and Complaint with the Court of Common Pleas in Charleston County, alleging several causes of action against the Defendants, including "wrongful detention/false arrest." (*Plaint. Compl.*). In his Complaint, Plaintiff specifically claims that the alleged incident took place "[o]n or about March 28, 2017...." (*Plaint. Compl.* ¶ 6). Throughout the course of this litigation, Plaintiff alleges and testifies that the incident took place on March 28, 2017. (*Plaint. Amnd. Compl.* ¶ 8; *Plaint. 2nd Amnd. Compl.* ¶ 8; Dep. G. Harris p. 139). Plaintiff also alleges a cause of action for "intentional infliction of emotional distress/outrage" against the Defendants throughout his numerous Complaints. (*Plaint. Compl.; Plaint. Amnd Compl.; Plaint. 2nd Amnd Compl.*)

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, affidavits, and discovery show there is no genuine issue of material fact such that the moving party must prevail as a matter of law. *Holmes v. E. Cooper Cmty. Hosp., Inc.*, 408 S.C. 138, 758 S.E.2d 483 (2014); Rule 56(c), SCRCP. "The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder." *Austin v. Beaufort County Sheriff's Office*, 377 S.C. 31, 34, 659 S.E.2d 122, 123 (2008). "In determining whether a genuine question of fact exists, the court must view all inferences which can be reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Bishop v. South Carolina Dep't of Mental Health*, 331 S.C. 79, 502 S.E.2d 78 (1998). Additionally, to resist a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts but must come forward with specific facts showing that there is a genuine issue for trial." *Baughman*

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

*v. American Tel. and Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991) (internal quotations deleted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986)). The party opposing summary judgment cannot rest on mere allegations or denials contained in the pleadings but rather must come forward with specific facts showing there is a genuine issue for trial. *Singleton v. Sherer*, 377 S.C. 185, 659 S.E.2d 196 (S.C. App. 2008).

## ARGUMENT

1. **Plaintiff's "Wrongful Detention/False Arrest" Claim is Time Barred by the Applicable Statute of Limitation Found in S.C. Code § 15-3-550 (1).**

South Carolina statute provides the period in which plaintiffs must bring any wrongful detention or false imprisonment claim and states that such a cause of action must be brought within two years of the date of the alleged injury. S.C. Code § 15-5-550 (1). The alleged wrongful imprisonment incident underlying this case occurred on March 28, 2017. (*Plaint. Compl.* ¶ 6). Although Plaintiff's Complaint characterizes its cause of action as "wrongful detention/false arrest," false arrest and false imprisonment are identical causes of action subject to the applicable two-year statute of limitation. The statute of limitation for Plaintiff's wrongful imprisonment cause of action thus expired on March 29, 2019. However, Plaintiff did not file his Summons and Complaint with the Charleston County Court of Common Pleas until February 19, 2020; nearly one year after the expiration of the statute of limitation. Accordingly, Plaintiff's claim for wrongful imprisonment is time barred under S.C. Code § 15-5-550 (1) and must be dismissed.

In his Complaint, Plaintiff characterizes his first cause of action against Defendants as "wrongful detention/false arrest." (*Plaint. Compl*). Plaintiff further alleges that Defendants: (1) improperly detained Plaintiff that resulted in his injuries, (*Plaint. Compl.* ¶¶ 15-16), and (2) intentionally and unlawfully restrained Plaintiff, (*Plaint. Compl.* ¶ 17). These factors mirror the necessary elements to maintain causes of action for both false arrest and false imprisonment. *See*

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

*Bryant v. City of Cayce, S.C.*, C.A. No. 3:06-333-MJP, 2010 WL 10827078, *2 (May 17, 2010) ("To prevail on a state law cause of action for false arrest, Plaintiff must establish: (1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful.") (citing *Law v. South Carolina Dept. of Corrections,* 368 S.C. 424, 629 S.E.2d 642, 651 (2006); s*ee also McBride v. School Dist. of Greenville Co.*, 389 S.C. 546, 567, 698 S.E.2d 845, 856 (Ct. App. 2010) ("To prevail on a claim for false imprisonment, the plaintiff must establish: (1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful.").

Under South Carolina law, false arrest and false imprisonment are identical causes of action and are both treated the same under state law due to their overlapping elements.[1] *See Carter v. Bryant*, 429 S.C. 298, 306, 838 S.E.2d 523, 527 (Ct. App. 2020) ("False arrest in South Carolina is also known as false imprisonment. The elements of the tort are intentional restraint of another without lawful justification."). Clearly, Plaintiff intended to allege a state cause of action for false arrest/false imprisonment because he failed to allege facts showing that his cause of action fell under any civil rights claim, which may be governed by a three-year statute of limitation.

Further, Plaintiff failed to assert anything other than the state cause of action for false arrest/false imprisonment in his subsequent Amended Complaint and Second Amended Complaint. (*Plaint. Amnd. Compl.*; *Plaint. 2nd Amnd. Compl.*). As such, Plaintiff's cause of action entitled "wrongful detention/false arrest" is actually a state law false imprisonment claim. Therefore, Plaintiff's "wrongful detention/false arrest" cause of action is subject to the applicable

---

[1] A distinction exists between a South Carolina state cause of action for false arrest and a federal cause of action for false arrest pursuant to civil rights violations, which are unapplicable here. The state cause of action for false arrest/false imprisonment is governed by the two-year statute of limitation found is S.C. Code § 15-3-550 (1). The federal false arrest cause of action, governed by 42 U.S.C. § 1983, maintains a three-year statute of limitation. *Brannon v. Blanton*, C.A. No. 9:15-2434-CMC, 2016 WL 4232886, *2 (D.S.C. Aug. 11, 2016)

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

two-year statute of limitation. *See* S.C. Code § 15-3-550 (1) (providing two-year statute of limitation for claims of false imprisonment).

In his Complaint, Plaintiff alleges that he suffered from an alleged false imprisonment on March 28, 2017, when Defendants: (1) allegedly blocked Plaintiff upon his exiting the elevator at the hospital; (2) allegedly blocked Plaintiff's path; and (3) allegedly prevented Plaintiff from exiting through the hospital entrance doors. (*See Plaint. Compl.*; *Plaint. Amnd. Compl.*; *Plaint. 2nd Amnd. Compl.*) Pursuant to the applicable two-year statute of limitation governing false arrest and false imprisonment, Plaintiff's claim expired on March 29, 2019. However, Plaintiff did not file the Summons and Complaint until February 19, 2020; nearly one year after the false imprisonment cause of action expired. Thus, Plaintiff's claim of for false imprisonment is untimely and time barred under S.C. Code § 15-5-550 (1). Therefore, Plaintiff's false imprisonment claim must be dismissed.

2. **Plaintiff's "Intentional Infliction of Emotional Distress/Outrage" Claim Should Be Dismissed Because it is a Recharacterization of the Allegations of the Time Barred False Imprisonment Claim.**

In addition to false imprisonment, Plaintiff also alleges Defendants are liable to him for IIED. However, to support this cause of action, Plaintiff simply realleges and recharacterizes the very same facts used to support his false imprisonment claim. By doing this, Plaintiff attempts to disguise his false imprisonment claim as IIED to circumvent the two-year statute of limitation for false imprisonment, as explained above. As such, because Plaintiff simply recharacterizes his false imprisonment claim and labels it IIED, this cause of action is also time barred under the applicable two-year statute of limitation.

South Carolina courts recognize the tort for IIED. *See Ford v. Hutson*, 276 S.C. 157, 162, 276 S.E.2d 776, 778 (1981) ("Specifically, in order to recover for the intentional infliction of

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

emotional distress, a plaintiff must establish that (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so 'extreme and outrageous' as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community'; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was 'severe' so that 'no reasonable man could be expected to endure it.") (citations omitted). Further, the statute of limitation for IIED is three years. *See* S.C. Code § 15–3–530; *Parkman v. University of S.C.*, 44 F. App'x 606, 619 (4th Cir.2002). However, to prevail on a false imprisonment claim, the plaintiff must show: "(1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful." *Huffman v. Sunshine Recycling, LLC*, 426 S.C. 262, 271, 826 S.E.2d 609, 614 (2019). As previously explained above, the statute of limitation for false imprisonment is two years. S.C. Code § 15-3-550 (1).

Parties cannot allege one cause of action and recharacterize it as another. *See South Carolina Medical Malpractice Liability Ins. Joint Underwriting Ass'n v. Ferry*, 291 S.C. 460, 464, 354 S.E.2d 378, 381 (1987) (holding original complaint alleging intentional sexual misconduct did not allege negligence or recklessness despite those terms use throughout complaint). To determine whether one claim is recharacterized as another, the court should look past the labels provided in the Complaint and look at the alleged wrongful acts themselves. *See Prior v. S.C. Medical Malpractice Liability Ins. Joint Underwriting Ass'n*, 305 S.C. 247, 249, 407 S.E.2d 655, 657 (Ct. App. 1991) (holding cause of action was for sexual assault despite its label of negligence).

In Plaintiff's original Complaint, he alleges both false imprisonment and IIED. (*Plaint. Compl*). In his false imprisonment claim, Plaintiff alleges that Defendants intentionally and

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

improperly detained the Plaintiff, (*Plaint. Compl.* ¶¶ 15 and 17), when Defendant Cooper: (1) "met" Plaintiff on the "first floor" of the hospital, took the IV from Plaintiff, and knocked Plaintiff's walker, (*Plaint. Compl.* ¶ 8), and (2) "choked the Plaintiff" as he was walking out of the door towards the parking garage. (*Plaint. Compl.* ¶ 9). Likewise, with his IIED claim, Plaintiff mirrors his previous assertions and alleges that due to the direct and proximate cause result of "Defendants restraint…and detainment of the Plaintiff," Plaintiff suffered damages such as physical pain and suffering and other emotional trauma. (*Plaint. Compl.* ¶¶ 23 and 26).

Moreover, Plaintiff subsequently filed an Amended Complaint and a Second Amended Complaint, both of which are substantively identical to each other. (*Plaint. Amnd. Compl.*; *Plaint. 2nd Amnd. Compl.*). To support his false imprisonment claim, Plaintiff alleges that Defendants forced Plaintiff "into a restriction of his personal freedom of movement without legal right" by intentionally: (1) blocking Plaintiff while exiting the elevator on the hospital's first floor; (2) blocking Plaintiff and threatening to remove his IV; and (3) placing Plaintiff in a choke hold when he neared the hospital exit doors. (*Plaint. Amnd. Compl.*; *Plaint. 2nd Amnd. Compl.* ¶¶ 24 and 26-28). Likewise, in Plaintiff's IIED claim, he alleges Defendants intentionally "deprived [him] of his liberty without lawful justification." (*Plaint. Amnd. Compl.*; *Plaint. 2nd Amnd. Compl.* ¶ 35). Plaintiff also alleges that Defendants held Plaintiff's walker over his head, threatened to remove Plaintiff's IV, and placed Plaintiff is a chokehold to support his IIED cause of action. (*Plaint. Amnd. Compl.*; *Plaint. 2nd Amnd. Compl.* ¶ 33).

In all three of Plaintiff's pleadings, he fails to allege a separate IIED cause of action, but simply tries to recharacterize and disguise a false imprisonment claim as IIED. Upon review of Plaintiff's original Complaint, Plaintiff only alleges facts sufficient to show false imprisonment, not for IIED, because <u>*both*</u> causes of action—as alleged by Plaintiff—hinge upon Defendants'

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

alleged intentional and wrongful detainment of Plaintiff. (*Plaint. Compl.* ¶¶ 15-17, 23-24). Plaintiff does not provide any additional factual allegations to support his IIED claim, nor does he elaborate on the conduct upon which Defendants could be found liable for IIED. As such, Plaintiff's IIED claim is not a proper IIED cause of action, but rather, is a disguised false imprisonment claim.

Likewise, Plaintiff's Amended Complaint and Second Amended Complaint employ similar language to disguise a time-barred false imprisonment claim as IIED. First, Plaintiff alleges that Defendant Cooper detained him at the first-floor elevator by blocking his pathway, by taking his walker, and holding it above Plaintiff's head. (*Plaint. Amnd. Compl.*; *Plaint. 2nd Amnd Compl.* ¶¶ 10-11, 33). Second, Plaintiff alleges Defendant Cooper blocked him and threatened to remove his IV. (*Plaint. Amnd. Compl.*; *Plaint. 2nd Amnd. Compl.* ¶¶ 24, 33). Third, Plaintiff alleges Defendant Cooper put him in a chokehold as he attempted to exit the hospital. (*Plaint. Amnd Compl.*; *Plaint. 2nd Amnd. Compl.* ¶¶ 24, 33).

As with Plaintiff's original Complaint, the gravamen of Plaintiff's allegations in the Amended Complaint and Second Amended Complaint center upon Defendants' alleged wrongful detainment, not on any conduct purporting to show IIED. Although Plaintiff recharacterizes the underlying facts to try and maintain his IIED claim, these same facts were used to support the false imprisonment claim. By allegedly taking the walker from Plaintiff, by allegedly blocking and threatening Plaintiff to take his IV, and by allegedly putting Plaintiff into a chokehold, Plaintiff has alleged facts purporting to show a cause of action for false imprisonment, not IIED.

By recharacterizing the allegations in the Amended Complaint and Second Amended Complaint, Plaintiff attempts to restate his false imprisonment claim as IIED to keep his false imprisonment claim alive beyond the two-year statute of limitation. Plaintiff cannot recharacterize false imprisonment as IIED because all of Plaintiff's Complaints utilize nearly identical allegations

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

to support both causes of actions. Thus, Plaintiff's IIED claim is a disguised false imprisonment claim and, as such, must be dismissed due to the applicable two-year statute of limitation.

## **CONCLUSION**

The two-year SC statute of limitation for false imprisonment is unequivocal. Plaintiff did not timely file his Complaint and these claims are thus time barred by statute. Further, because Plaintiff's "intentional infliction of emotional distress/outrage" claim is merely a false imprisonment claim in disguise, it too is time barred by the two-year statute of limitation because Plaintiff did not timely file his Complaint.

Thus, Defendants respectfully request this Court grant their joint Motion for Summary Judgment and dismiss with prejudice Plaintiff's second cause of action entitled "wrongful detention/false arrest" and Plaintiff's third cause of action entitled "intentional infliction of emotional distress/outrage."

*Respectfully submitted,*

MURPHY & GRANTLAND, P.A.

*s/ Ronald B. Diegel*
Ronald B. Diegel, Esq. (SC Bar #65076)
Zachary B. Randolph, Esq. (SC Bar #105179)
4406-B Forest Drive (29206)
P.O. Box 6648
Columbia, South Carolina 29260
(803) 782-4100
**Attorneys for Defendants Cooper, AlliedBarton, and Allied Universal Services**

Columbia, South Carolina
September 16, 2022

Melissa Bechtold - 2/22/2021

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Page 14

```
 1       Q     All right.  Do you have any idea where he
 2  was going?
 3       A     My guess is out but --
 4       Q     Yeah.  He looked like he was trying to
 5  leave?
 6       A     Correct.  Generally, you don't see walkers
 7  on the first floor.  People are either in
 8  wheelchairs or stretchers.  So unless they're, like,
 9  free to roam but -- so you assume that somebody is
10  coming down from upstairs in this attire.
11       Q     Were you able to -- I see in this frame
12  you're looking at the back of it, but were you able
13  to see who was talking or who was yelling or --
14       A     He was definitely yelling.
15       Q     I'm sorry?
16       A     He was definitely yelling.
17       Q     And when you say he, are you talking about
18  Mr. Harris?
19       A     The patient in the frame.  The man in the
20  hospital gown.
21       Q     How about the security guards?  Were they
22  yelling too?
23       A     No.
24       Q     Okay.  What was he yelling?
25       A     I don't recall exactly.  There was
```

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Melissa Bechtold - 2/22/2021

Page 15

1    conversation about doctors and medications.  That

2    kind of thing.

3        Q    Do you recall him saying he needed his

4    pain medications?

5        A    There was conversation about not getting,

6    basically, the correct medication.  Like, he wanted

7    one, and it wasn't available.  You know, I'm

8    assuming a lot about the main conversation, but the

9    feeling I got was that he was wanting medication

10   that wasn't being offered to him.  And the security

11   guard was saying, well, go up and talk to the nurse

12   about changing said medication or talking to your

13   doctor.

14                Now, that's not word for word what I

15   heard, but that was the feeling I got of the

16   conversation.

17       Q    Do you remember word for word what you

18   heard?

19       A    No.  It's three, four years ago, so no.

20       Q    So don't let me put words in your mouth,

21   but your take away is that you heard yelling.  You

22   believe that to be coming from Mr. Harris, and you

23   believe that he was upset that he wasn't getting

24   some type of medication, and that he wanted to leave

25   the hospital.  Is that your --

Joseph Cerroni                                May 12, 2021
Harris, Greg Vs. Cooper, Andrew, Trident Medical Center, LLC, Et Al

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Page 11

1    express what he didn't like and what was happening.

2              And then right around the ER entrance,

3    like just past the time clock, which if there is

4    one of the videos where there is -- there is the --

5    the gentleman, there is me, and there is a lady in

6    the background, and that hallway goes all the way

7    to the morgue.  It goes to where they have all the

8    supplies for the OR and the back dock.  But just

9    past that, there is an entrance -- a way to get to

10   the ER or you can continue to go to the surgical --

11   the surgical center.

12             And in between there, he swung at me

13   again with the walker, and that's when I caught it,

14   and I'm like, okay, that's the second time.  You

15   know, the first time I'm trying to look out after

16   you to help to make sure that you don't fall, but

17   this is not happening.  I'm not going to have you

18   use this as a weapon.

19             So I took it, and I put it against the

20   wall, and I asked the security officer -- which I

21   think his last name was Mack -- get me a

22   wheelchair, in case, you know, he gets -- because

23   he was getting more and more winded.  He looked

24   like he was getting more and more -- you know, he

25   was -- he was still agitated, but I didn't want him

Joseph Cerroni                                    May 12, 2021
Harris, Greg Vs. Cooper, Andrew, Trident Medical Center, LLC, Et Al

Page 12

```
 1    to fall.
 2              And by me taking his walker, I was
 3    trying to protect myself, but I'm like let's follow
 4    behind him with a walker -- or with a wheelchair
 5    rather -- in case it does happen, we can, you know,
 6    scoop him up real quick, and then we don't have an
 7    issue of -- you know, he was -- he's fairly big,
 8    and I didn't want to just have him fall and hit the
 9    ground, because that wouldn't have been good.
10              And he got really upset with that.  And
11    then there is a video that shows where he rips his
12    IV out, and then I was -- I got fluid on me,
13    partially, whatever was left in the IV, you know,
14    tube, and then blood because he -- he -- he just
15    pretty much ripped it out, and the video shows
16    that, too.
17              We continue to walk down towards the
18    surgical center.  And, again, I'm really the only
19    one that's interacting with him, and he's
20    explaining, getting upset, you know, of what has --
21    what he thinks has happened.  And, again, it's just
22    the security behind me and to my -- on my side, and
23    I'm pretty much the closest to this individual.
24              So then he takes a right into the
25    surgical center.  So there is a waiting room first,
```

Joseph Cerroni                          May 12, 2021
Harris, Greg Vs. Cooper, Andrew, Trident Medical Center, LLC, Et Al

Page 18

1    sense.

2              Q.    Yes.

3              A.    There is a way to -- there is a way to

4    stop that from freely opening.  And that's when he

5    broke through the first set, which basically they

6    just -- they just -- they just pop open.  And once

7    he got into the vestibule between that and the

8    final set of doors was when he lunged at Officer

9    Cooper.  And then Officer Cooper spread his base,

10   basically spreading his feet to try to not, you

11   know, fall over, and then they took it to the

12   ground.

13             Q.    Okay.  So, as I understand it, you

14   reached the first set of doors, and those doors are

15   closed.  They don't open automatically, but --

16             A.    Normally they do.  But they were --

17             Q.    Normally they do --

18             COURT REPORTER:  One at a time.  I can

19   only type one person at a time.

20   BY MR. DIEGEL:

21             Q.    So normally those doors don't open

22   automatically, but is Mr. Harris able to push on

23   those and get those open or how do those doors

24   open?

25             A.    Yeah.  So you can -- so the doors

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Joseph Cerroni                              May 12, 2021
Harris, Greg Vs. Cooper, Andrew, Trident Medical Center, LLC, Et Al

Page 19

1    normally, on a regular business day, normal

2    activity, when you step in front of it, like a

3    grocery store, you open and they open, and then

4    they close.  Same thing.  The sensor sees and then

5    opens up and closes.

6              But they were shut off, so it wouldn't

7    automatically open.  And he pressed forward, and

8    they just -- they pop open.  It's not like you're

9    breaking them or nothing, like you're just

10   forcefully opening them up.  And then that's when

11   they went into the vestibule, and then that's when,

12   you know, he lunged at Officer Cooper, and then

13   they went to the ground.

14        Q.   So actually the group there, or the

15   people that were there, made it through that first

16   set of doors and then were into the vestibule area?

17        A.   Uh-huh.

18        Q.   And there is another set of doors just

19   before you reach the outside; is that right?

20        A.   Yes, sir.  Double -- it's a double --

21   it's a double set.

22        Q.   And when you got into that area of the

23   vestibule, where was Officer Cooper in relation to

24   Mr. Harris?

25        A.   His back was up against the final set

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Joseph Cerroni                                    May 12, 2021
Harris, Greg Vs. Cooper, Andrew, Trident Medical Center, LLC, Et Al

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Page 20

1    of doors because before --
2          Q.    Okay.  Did you hear --
3          A.    Go ahead.
4          Q.    I didn't mean to cut you off.
5          A.    No.  I mean, you -- like, he's walking
6    alongside of us, and once we got to those set of
7    doors is when you see Officer Cooper take a
8    position that he's now not able to freely walk
9    forward.  And then he went into the vestibule.
10         So -- so when he got to the second set
11   of doors, the final doors to finally get out,
12   the -- this -- this individual that we're talking
13   about lunged at Officer Cooper and put him up
14   against the door and like -- so there is the set of
15   doors, and then there is like, obviously, 90-degree
16   angles for the wall because it's a glass vestibule.
17   They were in between that corner and the part of
18   the doors -- one of the part of the doors.
19         Q.    So, when you reached the vestibule area
20   and you're -- the parties in question are close to
21   that second set of doors, just before you go
22   outside, I believe you said that Mr. Harris was
23   standing between -- excuse me, Mr. Cooper --
24   Officer Cooper was standing between Mr. Harris and
25   those doors; is that right?

Joseph Cerroni                                    May 12, 2021
Harris, Greg Vs. Cooper, Andrew, Trident Medical Center, LLC, Et Al

Page 21

1          A.    Yes, sir.

2          Q.    Okay.  And did you also say that at

3    that point Mr. Harris, to use your words, lunged at

4    Officer Cooper?

5          A.    Yes, sir.

6          Q.    Did he physically initiate that contact

7    with Officer Cooper?

8          A.    Yes, sir.

9          Q.    Okay.  And what did you see Mr. Harris

10   do in terms of that contact with Officer Cooper?

11   Did he put his hands on Officer Cooper?

12         A.    Yes.

13         Q.    And whereabouts?

14         A.    In the chest, neck area.

15         Q.    Okay.  And what did Officer Cooper do

16   in response to that?

17         A.    Well, he grabbed -- the guy only had a

18   gown on, so he grabbed him in the same area.  So

19   they're -- both got ahold of each other.  You know,

20   but at -- so if you can imagine him lunging at

21   Officer Cooper, grabbing his shirt and his neck --

22   like the chest and neck area, Cooper grabbed him

23   and then spread his feet wide to try to avoid from

24   falling over, but then when he got pinned up

25   against the glass, that's when they all -- they

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Joseph Cerroni                                    May 12, 2021
Harris, Greg Vs. Cooper, Andrew, Trident Medical Center, LLC, Et Al

Page 35

1   stay for his medical condition, and that's why I
2   approached it.  And that's why I decided to try to
3   figure out what was going on to give us time to
4   talk to him and try to see if maybe he could kind
5   of come around to see that it was in his best
6   interest for his physical condition after the
7   surgery that he had just had.
8            It's not common that someone just walks
9   out of the hospital agitated as he was with an IV
10  hanging out of his arm after surgery.  So that's
11  why I approached it the way I did.  It was not
12  necessarily a mental condition.  I mean, it's -- at
13  that point, I'm looking at him presenting what he
14  did, it's not common that someone does that.
15           Q.   And I'm just picturing this in my mind.
16  As you positioned yourself in front of him or
17  between the exit door 25 feet plus or minus down
18  the hallway --
19           A.   Uh-huh.
20           Q.   -- and him, do you put your hands on
21  his walker and talk to him or how does he shake the
22  walker and --
23           A.   Nope.
24           Q.   -- how does that happen?
25           A.   He was coming off the elevator, and I

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Page 36

1    said, hey, what's going on?  Come over here.  Just
2    let's get out the way, because there's people
3    walking in the hall.
4            And I was trying to avoid anyone else
5    from getting hurt or possibly, because I don't know
6    what's going to happen.  I just saw him, and just
7    kind of basically like, come here, let's talk.
8    This way -- let's walk this way.  You know, tell me
9    what's going on.  Just -- just relax, I'm here to
10   help you.  I don't know what's happened on the
11   sixth floor.  But here, I want to help you.  What's
12   going on?  You know, are you okay?  That kind of
13   stuff.
14           And he just didn't want to hear any of
15   that, and then that's when he swung the walker.  I
16   blocked it, and I let him have it because, you
17   know, with what he was presenting medically and
18   physically, I felt in that -- at that moment, I
19   wasn't worried about him -- he didn't hurt me.  But
20   I felt it was necessary that he have the walker for
21   his situation.
22           That would have -- the best -- that was
23   my main attention was to make sure that it doesn't
24   get any worse, and we can figure out things and
25   then try to -- try to get him to try to come to

Joseph Cerroni                                          May 12, 2021
Harris, Greg Vs. Cooper, Andrew, Trident Medical Center, LLC, Et Al

Page 37

1    some understanding that, you know, one, what's

2    going on and how can we help you and how can we fix

3    it.

4                So that's why I let him keep the

5    walker.  It wasn't until the second time where I

6    realized that, okay, now he is making a choice to

7    try to physically hit me, and that's when I caught

8    it.  I took it out of his hands, I put it against

9    the wall, and continued to have him walk down the

10   hall, and then I asked for a wheelchair.

11        Q.   Okay.  And how far away from you was

12   he -- how far apart were you guys when he first

13   tried to swing the walker at you?

14        A.   Almost maybe four feet, five feet

15   maybe.

16        Q.   Okay.

17        A.   Not -- not in his personal space.

18        Q.   Okay.  So you weren't touching him at

19   the time with even your hand on the back or

20   anything?

21        A.   No, sir.  No.

22        Q.   You were just positioning yourself

23   between him and the exit, and he was getting

24   frustrated about that, right?

25        A.   I was just -- right.

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Joseph Cerroni                                    May 12, 2021
Harris, Greg Vs. Cooper, Andrew, Trident Medical Center, LLC, Et Al

Page 49

1          A.    Yes, sir.

2          Q.    Number two, that second interaction

3    with you and him with the walker.  And then

4    thirdly, the interaction with him and Mr. Cooper

5    between the doors of the exit to the hospital.  Is

6    that right?

7          A.    I -- I -- I -- I consider it four.

8          Q.    What's the fourth?

9          A.    When he ripped the IV out and I was

10   covered in his blood.

11         Q.    Okay.

12         A.    He threw it at me, so, I mean, that's

13   assault right there on my end.

14         Q.    How many videos did you watch?

15         A.    Five.

16         Q.    Okay.  Did you see a video of the

17   confrontation with the walker?

18         A.    No.

19         Q.    Did you see a video of the

20   confrontation with the second walker incident?

21         A.    No.

22         Q.    Okay.  Did you see a video with the

23   confrontation between my client and Mr. Cooper?

24         A.    No.

25         Q.    Okay.  Are there cameras in any of

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Joseph Cerroni                                    May 12, 2021
Harris, Greg Vs. Cooper, Andrew, Trident Medical Center, LLC, Et Al

Page 52

1    good.

2                He obviously doesn't understand.  At

3    that point is when he goes and gets in front of

4    him, not up in his personal space, it was about 6

5    to 8 feet away, but obviously it was in front of

6    his direct path.

7            Q.   Okay.  But somehow he's able to make it

8    through the first double doors that would normally

9    open, but for the code exit --

10           A.   Uh-huh.

11           Q.   -- which kept them closed, at least --

12           A.   Right.

13           Q.   -- for the automated opening of the

14   door system, that was shut out, right?

15           A.   Uh-huh.  Yeah.

16           Q.   All right.  Take me through that

17   detail.  I'm having a hard time understanding.  If

18   Mr. Cooper is in front of him, how does he still

19   walk through the door?  Did Mr. Cooper back up a

20   little bit to let him keep coming or how did that

21   work?

22           A.   I don't recall exactly how those two

23   doors actually got open, but I do know that once

24   the doors were breached and then they were in the

25   vestibule is when the client lunged at Cooper and

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Joseph Cerroni                                    May 12, 2021
Harris, Greg Vs. Cooper, Andrew, Trident Medical Center, LLC, Et Al

Page 53

1   pinned him up against between the left side of the

2   door and the corner where the whole glass vestibule

3   is.

4           Q.    And at this point, is Mr. Cooper still

5   in front of him in that he is between the exit door

6   and Mr. Harris?

7           A.    At that point, Office Cooper had no

8   choice, because your -- the individual that you're

9   representing got all up into his personal space,

10  grabbed him, and lunged forward and pinned him up

11  against the glass door and the left side of the

12  vestibule.

13          Q.    And those doors didn't open either?

14          A.    They didn't hit -- they didn't hit the

15  center of the doors.  He had him pinned to just the

16  far left of the door and the actual 90-degree angle

17  of the actual vestibule.  If that vestibule is a

18  box, you take the 90-degree angle, and then if the

19  left door is beginning to start, that's where it

20  was, right at the connection of the door and the

21  vestibule.

22          Q.    Is there any way Mr. Harris could have

23  left without physically pushing that door open and

24  bypassing Officer Cooper?

25          A.    What do you mean?  Explain that again.

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Joseph Cerroni                                    May 12, 2021
Harris, Greg Vs. Cooper, Andrew, Trident Medical Center, LLC, Et Al

Page 54

1        Q.    Is there any way he could have exited
2    the building in that area without physically
3    pushing on the doors and bypassing Officer Cooper?
4        A.    No.   He would have had to push the door
5    open.   So if you're asking how he could have done
6    that otherwise, no.
7        Q.    Could he have gotten out without
8    walking over Mr. Cooper or walking through
9    Mr. Cooper?
10       A.    I don't know.   That's not what
11   happened, though.   So...
12       Q.    I'm just saying, from your personal
13   observation, you were there, would there be any way
14   to get around Mr. Cooper, given Mr. Harris's
15   condition without a walker?
16       A.    Once the first set of doors were broke
17   is when the client lunged at Officer Cooper,
18   grabbed him by the scruff of the neck in this area
19   here, and pinned him up against the left side of
20   the vestibule.   That's -- that is the -- that is at
21   the very end is when he got physical and put hands
22   on staff.
23       Q.    Could he have gone around Mr. Cooper?
24   Would that have been possible?
25       A.    I don't know.   That's not what was

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Joseph Cerroni                              May 12, 2021
Harris, Greg Vs. Cooper, Andrew, Trident Medical Center, LLC, Et Al

Page 60

1    mentioned a little bit that Officer Cooper spread

2    his legs and that my client, as you stated, lunged

3    at Mr. Cooper.  How did they end up on the ground?

4         A.   Your client grabbed Officer Cooper,

5    lunged at him, grabbed him, and violently put him

6    up against the wall.  He spread his base to try to

7    keep his balance, and they both lost balance, and

8    they both went to the ground.  There was no

9    technique used.  It got taken to the ground because

10   of the forceful nature of how the client presented

11   that situation.

12        Q.   Okay.  And when he lunged at Mr. Cooper

13   and put him up against the wall, was it the door or

14   was it the glass wall window to the left or --

15        A.   That -- that and the left doorjamb of

16   the window -- of the door to the vestibule.

17        Q.   Okay.  Kind of in the corner of the

18   door and the window wall?

19        A.   Yes, sir.

20        Q.   Would the force of that not have

21   triggered the door to open?

22        A.   No, because you're right where the door

23   connects.  It's the strongest part of where that

24   door is, so it wouldn't have moved.

25        Q.   Versus if it was right in the middle of

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Page 61

1    station.  I was at the end of the hall.

2        Q.   Were you exclaiming in pain or were you

3    calling for people?  Were you --

4        A.   My wife was saying I was -- I recall

5    that I was -- it was more like an, oh, oh, oh.  You

6    know, just please help.  I'm hurting.  Please give

7    me something.

8            I remember the nurse telling me she

9    was going to give me some Tylenol and that upset me

10   because I wasn't -- it may have been Tylenol with

11   codeine, but it wasn't my cyclobenzaprine which

12   tends to help me and it also helps me kind of get

13   drowsy and go to sleep.  I just wanted to go to

14   sleep and -- and the pain to quit.

15           And this went on for hours and I

16   finally told them if they couldn't get it straight

17   I was going to have to go home and get my meds and

18   go to another hospital if they couldn't control my

19   pain.  And I asked for the doctor.  My wife called

20   the doctor's office several times.

21           Apparently he was at his office and

22   eventually he came over I want to say around 2:00

23   or 2:30 and -- about the time I was getting ready

24   to leave and go to another hospital after I got my

25   meds so I could show them what I take because I had

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Page 62

```
 1   gone through this.  I even went into the doctor's

 2   office the day before specifically to ensure that

 3   they gave me the proper meds because I've had meds

 4   given to me improperly at a hospital including

 5   Trident.  So they get things confused.  They don't

 6   know all the details.

 7            It's in error.  I understand, but that

 8   was frustrating.  And so I got up and left the

 9   room.  There was the head of pharmacy that walked

10   to the end of the hall with me, asking me to go

11   back and -- and they would do everything they could

12   and they were trying as hard as they can.

13            And I didn't doubt that they were

14   trying.  They just would not give me my prescribed

15   medication.  And when I went into the elevator she

16   stayed on the third floor.

17       Q.   Who was she?

18       A.   I think it was the third floor anyway.

19   The pharmacist.  The head of pharmacy.  I do not

20   know her name, really nice lady.

21            I asked my doctor before I left the

22   room, can I, you know, leave or can you stop me

23   from leaving?  And he said, no, we can't stop you

24   from leaving but I don't recommend it.  And that's

25   when I got up and left.  And then I asked her at
```

Greg Harris - 01/11/2021

Page 139

1          Q.    Okay.  And then if you would turn to

2     your -- to the witness statement.  It seems to be

3     two pages.  Is that your handwriting?

4          A.    Yes.

5          Q.    Would you just read it because I'm not

6     sure I can read everything.  I want to make sure

7     I -- I've got an accurate rendition of what you've

8     written.

9          A.    I honestly have trouble reading my

10    writing.  I apologize.

11         Q.    That's okay.

12         A.    North Charleston, South Carolina

13    Tuesday, March 28th, 2017 I arrived at Trident

14    Hospital at 5:30 AM to have knee replaced at

15    or around 2:30 PM.  After two and a half hours of

16    agonizing pain uncontrolled I told staff nurses if

17    they can't control pain I was going to have to go

18    to another hospital.  By 3:00 PM it was --

19         Q.    Terribly?

20         A.    -- terribly painful.  The doctor and

21    nursing staff said I could leave.  I got up and

22    headed toward my car parked in the parking garage

23    area side.  A nurse at elevator asked me again to

24    stay.  I asked, can you stop me?  She said, no.  I

25    took elevator to first floor using a walker.  The

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Page 140

1    security guard met me at the central elevators

2    roughly.  He --

3        Q.  Demanded?

4        A.  Yeah.  That's what it looks like --

5    demanded I be -- be removed or he would do it.

6    He also demanded my walker, blocking my way down

7    the hall.  White male, 6'2, 370.  I was guessing at

8    his weight and height.

9            I removed my IV and then threw to the

10   floor.  He shoved the walker into me and took -- he

11   took the walker from me.  I continued walking

12   toward the door when he blocked and cut off the --

13   closed the door, blocked and -- and cut off --

14   closed blocking the exit.  And I pushed the door

15   open and I tried to go around him.

16           He slammed me into wall, kicked me in

17   my new knee, busted open my leg bruising and -- and

18   bloodened (sic) up in the -- this area choking me

19   and -- and was -- oh, gosh -- to the point I

20   blacked out from -- for a few seconds.  Someone

21   made him stop and I continued to my car asking why

22   did they do that.

23           My wife arrived at my car and there

24   were several people surrounding my vehicle

25   including an officer who would not write a report.

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Pam Hourihan - 2/23/2021

Page 14

1    honestly, this was so long ago.  I really don't

2    recall all the specific things that happened but

3    we -- at some point, I was back in the room.  We

4    went -- let me back up and tell you this.

5                    The room where he is is -- and I know

6    I'm not supposed to use my hands.  The room where he

7    was is directly outside of the desk where we sit on

8    that floor.  So I could hear that he was not feeling

9    well.  I stepped in, double-checked to see how he

10   was doing.  Came back out.  Then, at some point, the

11   physician came in.  We were both in there because I

12   was speaking to his wife and him and some -- I don't

13   know what exactly happened during the conversation,

14   but he got agitated and got up and went to leave.

15                   When he did, his wife was upset.  She

16   asked me if there was anything I could do.  I walked

17   with him down the hallway to the end, basically,

18   asking him to please reconsider.  We had given him,

19   you know, quite a bit of medicine.  He probably

20   should not be leaving hospital at that time.  He

21   just continued to walk.

22                   I went with him to the elevator,

23   which goes down to the first floor.  He was telling

24   me that he was going to leave.  Didn't matter what I

25   had to say.  The elevator got to the bottom; he

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Pam Hourihan - 2/23/2021

Page 19

1  because I was worried that he had had a lot of

2  medication, and I did not want him to just go home.

3  So --

4      Q    What kind of medication did he have?

5      A    I don't remember any of that.  I just

6  remember feeling that he had had a lot after, and

7  that I did not want him to just go home.

8      Q    So did you, in fact, go back down the

9  elevator?

10      A    I did.

11      Q    Okay.  Tell me what happens next.

12      A    I went back down the elevator, down the

13  hallway to ACC, which is our ambulatory care center,

14  which is where folks come in when they're going to

15  have outpatient surgery or inpatient surgery.  I

16  went out to the ACC doors because he was actually

17  sitting outside in his vehicle.  I went out and

18  asked him if he -- if he felt like he needed to

19  leave, that was fine, but I asked that he would go

20  to another facility because he had had a lot of pain

21  medicine.  I didn't want him to go home.  And he --

22  he said that he would -- he would think about that,

23  and I asked him -- he was smoking a cigarette at the

24  time, and I asked him, why don't you just smoke a

25  cigarette.  Kind of relax a little bit, and then,

Pam Hourihan - 2/23/2021

Page 20

1    let's see, if you don't mind, going back inside of

2    the -- inside to your room so that we can work

3    things out.

4         Q    But at this point, he's bleeding all over

5    the place, right?

6              MR. MARIANI:  Object to the form.

7         A    No.

8    BY MR. RICKER:

9         Q    You don't remember his wound is bleeding

10   or if -- do you have any recollection of any blood

11   coming out of his wound?

12        A    Not that I remember, but I wasn't right on

13   top of him.  I was on the other side of the vehicle.

14        Q    Okay.  So could you see his knee?

15        A    No.

16        Q    Okay.  All right.  Did he tell you I was

17   just attacked by a security guard?

18        A    No.  Not that I remember.

19        Q    Okay.  And you mentioned that you can't

20   remember every detail.  Is that that you don't

21   remember whether or not he said that?  Is that fair?

22             MR. MARIANI:  Objection.

23        A    I do not remember him saying that, no.  Is

24   that the question?

25

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

Eric Mack - 4/23/2021

Page 16

1    Q.   Did you witness Mr. Cooper kicking the
2    plaintiff?

3    **A.   No, sir.  I did not witness that.**

4    Q.   Did you witness the plaintiff falling to the
5    ground?

6    **A.   No, sir.  I did not witness that.**

7    Q.   Did you witness someone putting their hands
8    on Mr. Cooper to try to attempt to get Mr. Cooper to
9    release his hold on the plaintiff?

10   **A.   No. I didn't witness that.**

11   Q.   Just to make sure, when I say "Plaintiff," I
12   mean Mr. Harris.

13   **A.   Okay.  If you're asking me -- if I'm getting**
14   **this correct.  If you're asking me did Mr. Harris**
15   **put his hands on Officer Cooper, I did witness that,**
16   **and the medical staff that came in between the two**
17   **of them to separate them when they were against the**
18   **window inside the ambulatory care area, I did**
19   **witness that.**

20   Q.   What, if anything, could Mr. Cooper have done
21   to prevent a physical altercation when Mr. Harris
22   was trying to leave the hospital?

23   **A.   I don't think that anything could have been**
24   **done any different.  He did it textbook.  I don't**
25   **think anything else could have been done to prevent**

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

7dc9a325-93c5-478f-bf4a-4ffa20b4d5ea

Lynn Minear-Moore - 2/9/2021

Page 19

1   the --

2           MR. DIEGEL:  That's a good Texas word.

3       A    That's a Texas word and you-all.

4   BY MR. RICKER:

5       Q    Clomping.  C-l-o-m-p-i-n-g, right?

6       A    Sure.

7       Q    All right.  What happens next?

8       A    He gets further down the hallway.  I did

9   start to follow.  Again, we're worried about patient

10  safety.  Somebody that shouldn't be wondering the

11  hallways.  Of course, at the time, I didn't know

12  what his condition was.  And then, at one point in

13  the hallway, I saw him stop with the security

14  guards, and he raised the walker like he was going

15  to hit someone.

16      Q    How far did he raise it up?

17      A    At least waist high so that the prongs

18  were going toward the ceiling.  You know, the feet

19  of the walker.  I know.  He can't see me raising my

20  hands.

21      Q    So he had the base or the -- where you put

22  your hands on the walker about waist high but --

23      A    Correct.

24      Q    -- the feet were sticking straight up in

25  the air?

DRAFT COPY

ELECTRONICALLY FILED - 2022 Sep 16 4:05 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

**FORM 4**

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | **JUDGMENT IN A CIVIL CASE** |
| **COUNTY OF** Charleston | |
| **IN THE COURT OF COMMON PLEAS** | **CASE NO.** 2020CP1000906 |

| | |
|---|---|
| Greg Harris | Andrew Cooper et al |
| PLAINTIFF(S) | DEFENDANT(S) |

**DISPOSITION TYPE (CHECK ONE)**

☐ **JURY VERDICT**. This action came before the court for a trial by jury. The issues have been tried and a verdict rendered.

☑ **DECISION BY THE COURT**. This action came to trial or hearing before the court. The issues have been tried or heard and a decision rendered.

☐ **ACTION DISMISSED** (*CHECK REASON*): ☐ Rule 12(b), SCRCP; ☐ Rule 41(a), SCRCP (Vol. Nonsuit); ☐ Rule 43(k), SCRCP (Settled);
☐ Other

☐ **ACTION STRICKEN** (*CHECK REASON*): ☐ Rule 40(j), SCRCP; ☐ Bankruptcy;
☐ Binding arbitration, subject to right to restore to confirm, vacate or modify arbitration award;
☐ Other

☐ **STAYED DUE TO BANKRUPTCY**

☐ **DISPOSITION OF APPEAL TO THE CIRCUIT COURT** (*CHECK APPLICABLE BOX*):
☐ Affirmed; ☐ Reversed; ☐ Remanded;
☐ Other

NOTE:    ATTORNEYS    ARE    RESPONSIBLE    FOR    NOTIFYING    LOWER    COURT,    TRIBUNAL,    OR
ADMINISTRATIVE AGENCY OF THE CIRCUIT COURT RULING IN THIS APPEAL.

**IT IS ORDERED AND ADJUDGED:** ☐ See attached order (formal order to follow) ☑ Statement of Judgment by the Court:

> Defendant Yale Enforcement Services' Motion for Summary Judgment was filed on May 31, 2022 and was heard by this Court on September 20, 2022. Upon careful consideration of both the arguments and submissions from counsel, this court respectfully Denies Defendant's Motion for Summary Judgment without prejudice. Plaintiff has 30 days to amend/clarify complaint.

**ORDER INFORMATION**

This order ☐ ends ☑ does not end the case.                    ☐ See Page 2 for additional information.

## For Clerk of Court Office Use Only

This judgment was electronically entered by the Clerk of Court as reflected on the Electronic Time Stamp, and a copy mailed first class to any party not proceeding in the Electronic Filing System on  09/26/2022  .

**NAMES OF TRADITIONAL FILERS SERVED BY MAIL**

ELECTRONICALLY FILED - 2022 Sep 26 2:58 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

**Court Reporter:**

**E-Filing Note:  The date of Entry of Judgment is the same date as reflected on the Electronic File Stamp and the clerk's entering of the date of judgment above is not required in those counties. The clerk will mail a copy of the judgment to parties who are not E-Filers or who are appearing pro se. See Rule 77(d), SCRCP.**

ELECTRONICALLY FILED - 2022 Sep 26 2:58 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2022 Sep 26 2:58 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906



Charleston Common Pleas

**Case Caption:**     Greg  Harris VS Andrew  Cooper , defendant, et al

**Case Number:**     2020CP1000906

**Type:**                 Order/Electronic Form 4

So Ordered

s/Jennifer B. McCoy #2764

Electronically signed on 2022-09-26 14:05:30     page 3 of 3

ELECTRONICALLY FILED - 2022 Oct 09 8:24 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

STATE OF SOUTH CAROLINA

COUNTY OF CHARLESTON

IN THE COURT OF COMMON PLEAS

CIVIL ACTION NO:   2020-CP-10-00906

Greg Harris
                          Plaintiff,

v.


Andrew Cooper, Allied Barton Security
Service, LLC, d/b/a AlliedBarton and Yale
Enforcement Services n/k/a Allied Universal
Services,

                          Defendants.

**THIRD CONSENT SCHEDULING
ORDER**

It appearing to the Court that mediation has been completed, additional out of state depositions have been conducted and that the parties now wish to engage in medical and/or expert discovery to complete preparation of the case for trial,

And it further appearing that the parties wish to establish a reasonable time frame for the completion of this needed discovery and then the trial of this case, and that the parties have agreed to the following:

1) The trial of this case will not be before April 1, 2023.

Accordingly, by and with the consent of all parties through their counsel this Consent Scheduling Order shall be entered, and the parties shall comply therewith.

AND IT IS SO ORDERED.


_____

Chief Administrative Judge for the Ninth Judicial Circuit


_____, 2022

**WE CONSENT**:


_s/Brice E. Ricker_
Smith Ammons, LLC
1668 Old Trolley Road, Suite 104
Summerville, SC 29485
bricker@smithammonslaw.com
Phone: 843-900-2020
_Attorney for Plaintiff_

_s/Ronald B. Diegel_
Ronald B. Diegel, Esquire
Murphy & Grantland, PA
P.O. Box 6648
Columbia, SC 29260
Phone: 803-782-4100
Fax: 803-782-4140
rbdiegel@murphygrantland.com
_Attorneys for Defendants Andrew Cooper,_
_AlliedBarton Security Services, LLC d/b/a_
_AlliedBarton and Yale Enforcement Services n/k/a_
_Allied Universal Services_

ELECTRONICALLY FILED - 2022 Oct 09 8:24 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906

ELECTRONICALLY FILED - 2022 Oct 09 8:24 PM - CHARLESTON - COMMON PLEAS - CASE#2020CP1000906



Charleston Common Pleas

**Case Caption:**    Greg  Harris VS Andrew  Cooper , defendant, et al

**Case Number:**    2020CP1000906

**Type:**    Order/Scheduling Order

So Ordered

s/Jennifer B. McCoy #2764

Electronically signed on 2022-10-09 20:23:49    page 3 of 3